Merrimack,
No. 4460.

HARTFORD ACCIDENT AND INDEMNITY COMPANY

*v.*

WALTER J. COME, JR. & a.

Argued March 6, 1956.

Decided April 27, 1956.

180

*Sheehan, Phinney & Bass* and *William S. Green* (*Mr. Green* orally), for the plaintiff.

*Donald W. Cushing* for the defendant Come, furnished no brief.

*Eugene S. Daniell, Jr.* (by brief and orally), for the defendant Caldwell.

*Nighswander, Lord & Bownes* for the defendant Postles, furnished no brief.

DUNCAN, J. The policy issued by the plaintiff in this case does not differ essentially from the policy which was before the court in *Employers &c. Corp.* v. *Roux*, 98 N. H. 309. The fact that the policy in that case was designated a "named operator policy" rather than a "non-owner policy" is not significant. Neither policy described any automobile owned by the insured, and in each case paragraph 1 of the statutory endorsement was replaced by an endorsement limiting coverage to automobiles owned by persons other than the named insured.

As was pointed out in the *Roux* case *supra*, such a policy is not a "motor vehicle liability policy" as defined by the Financial Responsibility Act (RSA 268:1 VII) because it insured no motor vehicle owned by the insured as provided by paragraph (a) of sub-

section VII. The effect of the statement contained in paragraph 2 of the statutory endorsement, that the policy provisions required by the statute are incorporated in the policy by reference, is therefore limited to the provisions of paragraph (b) of subsection VII. That paragraph requires indemnity with respect to the "presence of" the insured in any "motor vehicle" other than his own against liability arising out of accidents which occur in New Hampshire. Paragraph 2 of the statutory endorsement thus "had the effect of incorporating in the policy only such statutory requirements as were applicable to the situation." *American &c. Co.* v. *Provencher,* 90 N. H. 16, 19. Hence the coverage afforded the insured by the policy and statutory endorsement insured him in the operation of any "motor vehicle" not owned by him. The statutory definition of "motor vehicle" encompasses motorcycles (RSA 268:1 IX) and accordingly the coverage extended to motorcycles not owned by the insured. To afford this limited coverage, the word "automobile" as used in the policy must be construed as equivalent to the statutory words "motor vehicle." Consistency requires that the language of the "non-owner policy" endorsement, excluding from coverage "any automobile owned by the Named Insured," be similarly construed. In consequence the motorcycle owned by the insured was excluded from coverage.

It follows that a judgment should be entered in favor of the plaintiff in this case (*Employers &c. Corp.* v. *Roux, supra*), unless by its conduct it is estopped to deny coverage, or has waived its right to rely upon the provisions which exclude from coverage a motorcycle owned by the insured. By denying the defendant Caldwell's fourth request for rulings and by granting the plaintiff's fifteenth request for findings and rulings, the Trial Court ruled that the plaintiff is not "estopped in any way from pointing out that there was no coverage afforded." The Court's action should be sustained unless a different conclusion is required as a matter of law. To determine this question consideration must be given to circumstances having no parallel in the *Roux* case.

The insured first applied to the plaintiff for insurance in January 1952, and was then issued a policy identical with the policy in effect on October 9, 1953, which was a renewal. Because he was unable to obtain insurance in regular course, he applied for insurance under the "automobile assigned risk plan." See 15 Ohio St. L. J. 172. His application stated that he was required by the Motor Vehicle Commissioner to file evidence of financial responsibility

because of a conviction in 1948 for driving while under the influence of intoxicating liquor. The application further stated that the Commissioner required the applicant's "license" to be insured. The plaintiff thus was chargeable with knowledge that the original policy held by its insured was issued to comply with the requirements of RSA 268:3. Under this section the insured was required to maintain "proof of his financial responsibility in the future"; and in reliance upon the policy issued by the plaintiff, the insured was licensed to operate motor vehicles in New Hampshire. Since the policy thus sought and obtained furnished no coverage with respect to vehicles owned by the insured, it was insufficient "proof" to permit the registration of motor vehicles by the insured. See RSA 268:3, 19, 24.

In January 1953, when the renewal policy now in question was issued, the insured's ownership of an automobile came to the attention of the issuing broker, who thereupon wrote to the insured advising him that "protection was not afforded" him by his policy in the operation of an "uninsured car belonging to a member of [his] family" or in the operation of "car" owned by him.

In March 1953, the insured applied for registration of a motorcycle. Consistently with the statute this registration should not have been issued, since the applicant had never furnished proof of financial responsibility in the future with respect to claims arising out of the operation of vehicles owned by him. In his application however he represented that the "company covering this vehicle" was the plaintiff company, and the registration was issued.

On June 14, 1953, the insured was involved in a collision while operating the motorcycle. His report of the accident to the Motor Vehicle Commissioner tended to show that the collision was not due to his fault. It stated that he was the owner of the vehicle and that "at the time of the accident . . . owner (or driver) of [his] vehicle" was "covered by insurance for damage or injury to others" by "non-owner policy" issued by the plaintiff company; and gave the number of the policy now in question. Attached to and forming a part of the report, was a blank designed to be detached by the Commissioner and forwarded to the insurer, directing that it be returned to the Commissioner "in 15 days if no policy was in effect as alleged by motorist." It also provided spaces to indicate if a policy applied to an operator but not an owner, and vice versa. On the reverse of this blank, over the signature of the insured, appeared a statement that the "company which issued policy to

cover liability for damage or injury to others" was the plaintiff, with a description of the motorcycle involved in the accident together with the date and place of the accident of June 14, 1953. The accident report was prepared for the insured by the issuing broker, and a copy of it was sent by the broker to the plaintiff company on June 15, 1953.

Following this accident, claim was made against the insured by a Massachusetts attorney on behalf of the other person involved. This demand was forwarded to the plaintiff by the broker, and the plaintiff investigated the accident. At the trial it was conceded that it made no disclaimer of coverage to the insured. The record is silent as to whether the claim was abandoned or settled, but there is no evidence that the insured heard from it further.

On July 3, 1953, the insured's registration was transferred to another motorcycle which was later involved in the accident of October 9, 1953. Once more, his application for registration stated that the plaintiff was the "Company covering this [the new] vehicle."

Presumably the blank attached to the report of the June 14 accident which was designed for use by the insurance company in reporting to the Commissioner concerning the insured's policy had been forwarded to the plaintiff by the Commissioner after receipt of the accident report (RSA 268:5 IV), unless the Commissioner was satisfied that the insured did not cause or contribute to cause the accident. *Id., s.* 8 (b). As to this there was no evidence, but since the insured was permitted to retain his registration, it is apparent that either the company made no reply to the Commissioner's inquiry, or no inquiry was made because the Commissioner was satisfied that the insured was not responsible for the accident. The fact remains that regardless of whether inquiry was made or not, under section 3 of the statute which was invoked to require the insured to procure insurance in the first place, he was not entitled to register the motorcycle because he had never furnished proof of financial responsibility in the future with respect to a vehicle owned by him.

The subsequent involvement of the motorcycle in the accident of October 9, 1953, without insurance to protect injured persons stemmed directly from the failure to enforce the provisions of section 3. The issue is whether the failure was induced by conduct of the plaintiff. It is true that the company could have complied with the literal requirements of RSA 268:5 IV, without notifying the Com-

missioner that its policy afforded no coverage against damages arising out of the collision of June 14, 1953, in which the insured was operating a vehicle owned by him. In terms, the statute merely requires the insurer to notify the Commissioner "in case such policy . . . was not in effect at the time of such accident"; and the policy described by the insured was "in effect" at that time. But as the plaintiff knew, it afforded no protection against injuries caused by the operation of the vehicle owned by the insured. Under the circumstances disclosed, we think that the statute imposed a duty upon the plaintiff to notify the Commissioner following the accident of June 14.

Unlike some statutes (see New Jersey Statutes, Anno. 39:6-46 (b); Ohio Rev. Code Anno. ss. 4509.51-.52), our financial responsibility law does not specifically provide in the alternative for insurance either of vehicles owned by the insured, or of his operation of vehicles owned by others. See also, *Saffore* v. *Atlantic Cas. Co.*, (N. J.) 121 A. (2d) 543. Our statute was designed to require both types of coverage together. RSA 268:1 VII. See *Employers &c. Corp.* v. *Roux, supra.* For this reason the language of the statute was not designed specifically to meet the situation presented by the comparatively recent practice of issuing "non-owner" or "named operator" policies, and of accepting such policies under the statute both as security, and as proof of financial responsibility in the future.

In the case before us approval of the policy by the Insurance Commissioner has not been questioned. RSA 268:18. It was accepted by the Motor Vehicle Commissioner as proof of financial responsibility in the future. So long as an insured who is required to furnish such a policy as security or as proof of financial responsibility in the future is denied registration for any vehicle owned by him, the public is afforded the protection which the statute intended. The law adopted no policy that an operator must own and insure a motor vehicle in order to obtain insurance covering his operation of the vehicles of others. See *Shelby &c. Co.* v. *Lynch,* 89 N. H. 510, 511. *Cf. Merchants &c. Co.* v. *Egan,* 91 N. H. 368. Only when an operator insured under such a limited policy is permitted to register a vehicle of his own is the intent of the statute violated.

The Financial Responsibility Act was designed not merely to regulate the rights of operators and registrants of motor vehicles, but also the rights and obligations of insurers issuing policies to comply with the statute. See *Saffore* v. *Atlantic Cas. Co., supra.*

In imposing a duty upon a company to notify the Commissioner whether a policy was "in effect" at the time of an accident, RSA 268:5 IV was clearly designed to provide the Commissioner with information as to whether a motorist claiming to be insured is able to furnish "sufficient security to satisfy any judgment or judgments for damages resulting" from the accident to which the inquiry relates. *S. 5 I.* This purpose was necessarily apparent to the plaintiff; and it was to be taken into account in determining the plaintiff's course of conduct. If the inquiry contemplated by the blank attached to the accident report was forwarded by the Commissioner to the plaintiff, the plaintiff had a plain duty to disclose the lack of coverage. *S. 5 IV, supra.* If the inquiry was not made by the Commissioner, the plaintiff had "notice of such accident" (*Id.*) from its issuing broker and from its own investigation, and knew that its insured relied upon the policy as evidence of coverage. Its failure to notify the Commissioner of the facts resulted in renewal of the insured's registration in July and in his uninsured status when the accident of October 9, 1953, ultimately occurred. Had the plaintiff notified the Commissioner that its policy afforded no coverage with respect to the motorcycle registered to the insured in June, it cannot be doubted that the Commissioner would have suspended the registration until insurance was obtained which would have protected the defendants injured in the October collision.

We are of the opinion that by virtue of the statute and even if inquiry was not made by the Commissioner, the company was under an obligation to the public, and to the Motor Vehicle Commissioner representing the public of which the defendants Postles and Caldwell are members, to notify the Commissioner in compliance with RSA 268:5 IV that its insurance did not satisfy the statutory requirements of security for the payment of any judgment arising out of the June accident, or of proof of financial responsibility in the future with respect to the operation of the insured's vehicle. As applied to the policy in this case, the purpose of the statute could be fulfilled only by such notification. The plaintiff's duty to notify the Commissioner arose on "the receipt of notice of such accident," whether notice came from the Commissioner or the insured. Performance of its obligation by the plaintiff would have prevented the insured's continued operation of an uninsured motorcycle owned by him. By allowing the Commissioner to remain ignorant of the lack of required security and to rely upon its

silence, (s. 5 IV *supra*) the plaintiff caused the third party defendants to be deprived of the protection to which the statute entitled them, to their obvious damage. See *United States Cas. Co.* v. *Timmerman,* 118 N. J. Eq. 563, 567; *Hoosier Cas. Co.* v. *Fox,* 102 F. Supp. 214, 239. It should therefore be estopped to deny coverage. *Bowen* v. *Casualty Co.,* 99 N. H. 107, 113, 114.

Since this conclusion is one of law, resting upon undisputed facts, the findings and rulings of the Trial Court to the contrary are set aside. See *Lumbermen's Mut. &c. Co.* v. *Rozan,* 92 N. H. 328. Cf. *LePage* v. *Company,* 97 N. H. 46, 49. No question of the credibility or weight of testimony, or of finding the facts from such testimony is involved. The representations by the insured to the Motor Vehicle Commissioner are established by uncontroverted documentary proof. The plaintiff's failure to perform its statutory duty to notify the Commissioner of the lack of "security" provided by its policy, and of its inadequacy as proof of financial responsibility in the future is demonstrated by the fact that the registration was issued in July and allowed to remain in effect. The Commissioner's reliance is established by the same evidence.

A judgment should be entered declaring that the plaintiff is obligated to defend the pending tort actions and to satisfy any judgments therein within the limits of the policy.

*Judgment for the defendants.*

All concurred.

ON REHEARING. After the foregoing opinion was filed the plaintiff's motion for rehearing was granted. The decision rested in part upon a ground not presented in argument and rehearing afforded the parties an opportunity to be heard respecting it. See *Perkins* v. *Company,* 90 N. H. 534, 539.

*Sheehan, Phinney & Bass* (*Mr. Phinney* orally), for the motion.

*Eugene S. Daniell, Jr.* (by brief and orally), opposed.

DUNCAN, J. The plaintiff's argument on rehearing is directed primarily to the proposition that the Commissioner of Motor Vehicles had in his possession following the accident of June 13, 1953, all the information necessary to the performance of his

statutory duties, and that he consequently cannot be held to have relied upon the plaintiff's failure following the accident to inform him of the limited coverage afforded by its policy. The argument will not withstand analysis.

If it is assumed that the plaintiff filed a certificate of insurance showing issue of a "non-owner policy" to Come, this was done in early January 1952, when the first policy was issued. The Commissioner had no information from the company between then and June 13, 1953, as to whether the company had or had not issued a policy affording broader coverage. In the interim the insured had registered a motorcycle, representing that the vehicle was insured by the plaintiff company. The information contained in his accident report filed after the accident was at best inconclusive. The Commissioner received no further information from the plaintiff upon which he could reasonably rely, except the information implied in its silence after notice of the accident.

The statutory provisions prescribing the action to be taken following an accident do not contemplate that the question of suspension of the operator's license and registration (RSA 268:5 I) shall be decided upon information furnished by the insurer long before the accident occurs. It is to be determined upon a basis of the insurer's notification to the Commissioner after the accident, or the lack of such notification. *S. 5 IV.* As the foregoing opinion points out, the insurer is charged after notice of the accident with the duty of advising the Commissioner if its policy does not satisfy the statute as security against liabilities arising from the accident. The statute in effect directed the Commissioner to rely upon the plaintiff's silence as evidence that "a [motor vehicle] policy . . . was in effect at the time of the accident." *Id.* The Commissioner took no action suspending the insured's registration, or requiring him to furnish security. We therefore reaffirm our conclusion that he must be held to have relied upon the plaintiff's silence.

Our conclusion expressed in the opinion, that the Commissioner would have taken action under section 5 I if the plaintiff had advised him following the accident that its policy did not cover the motorcycle, does not strike us as a "perfect non sequitur" as the plaintiff suggests. The possibility that a clerical error may have accounted for the issuance of the insured's registration in March 1953 is understandable. However it is improbable that after receipt of a report of personal injury caused by the accident of June 13,

1953, the Commissioner would have failed to suspend the insured's registration as required by section 5 I, had the plaintiff notified him that there was no insurance coverage for this accident.

Other arguments advanced by the plaintiff require no elaboration of views previously expressed. The order is

*Former result affirmed.*

All concurred.
June 22, 1956.