**ROYAL INDEMNITY COMPANY**

v.

**Henry CLINGAN, Linda Clingan and Robert D. Bluford.**

**Civ. A. No. 4344.**

United States District Court
E. D. Tennessee, S. D.

Feb. 12, 1965.

Horace Smith, Jr., Chattanooga, Tenn., for defendant Bluford

FRANK W. WILSON, District Judge.

This is an action for declaratory judgment upon an automobile liability insurance policy. The case was tried by the Court sitting without a jury. Much of the evidence was in the form of admissions and stipulations and the facts were largely undisputed. The Court finds the relevant and material facts to be as follows:

Royal Indemnity Company, the plaintiff in this action, issued an automobile liability insurance policy in standard form designating Mabel R. McGee as the named insured and describing a 1955 Chevrolet as one of the two insured vehicles under the policy. The period of the policy was from July 24, 1963, to July 24, 1964, and the policy limits were $5,000.00 for each person injured, $10,-000.00 for each occurrence, and $5,000.00 property damage. The policy was issued upon the representation that Gene McGee, the unmarried minor son of Mrs. McGee, who however was living away from home, would drive the automobile, but that Mrs. McGee was the owner. The facts in this regard were that Mrs. McGee purchased the automobile in her name for the use of her son as he was a minor, but that he was making the payments upon the car and would eventually become the owner of the car. Mrs. McGee gave specific instructions to her son that he was not to permit anyone else to drive the automobile.

Upon December 11, 1963, during the policy period, the insured automobile, while being driven by the defendant, Robert Bluford, was involved in an accident in Hamilton County, Tennessee, with a vehicle driven by the defendant, Henry Clingan, who was accompanied at the time by his daughter, Linda Clingan, both of whom received injuries in the accident and are parties defendant to this lawsuit along with Robert Bluford. At the time of the accident Bluford was driving the insured automobile unaccompanied and without the knowledge or per-

Noone, Moseley & Bell, Chattanooga, Tenn., for plaintiff.

Schoolfield & Taylor, Chattanooga, Tenn., for defendants Clingan.

mission of the named insured. He was upon a mission in which neither the named insured nor Gene McGee had any interest. Bluford had obtained permission from Gene McGee to use the car, however, representing that he was going on a service call for his employer, an automobile parts dealer, such permission being given by Gene McGee contrary to the express instructions of his mother, the named insured in the policy.

Upon December 19, 1963, Bluford filed an accident report and insurance coverage report, being Forms SR–1 and SR–21, with the Department of Safety, State of Tennessee, in compliance with the Financial Responsibility Law of this State. The plaintiff, Royal Indemnity Company, did not in any way participate in the filing of these forms. Thereafter, under date of January 14, 1964, the Director of the Financial Responsibility Division forwarded the SR–21 form to the plaintiff for confirmation of the insurance coverage. The letter of transmittal referred to the case as the "Mabel R. McGee" case, but the SR–21 form enclosed reflected the fact that Bluford was the operator of the vehicle claimed to be insured. The letter of transmittal advised the plaintiff that "Unless acknowledgement is submitted within ten days from the date of this letter, we will assume no coverage is in effect for any of these subjects." However, actually the *reverse* of this was testified to as being the practice, the Supervisor of the Division of Financial Responsibility testifying that unless the insurance carrier affirmatively notified his office of any denial of coverage, coverage was assumed to be in effect. The plaintiff, by stipulation, acknowledged that it was aware that this "negative approach" was followed. That such important business would be transacted by an official of the State and acceded to by insurance carriers in the manner testified to would be unbelievable were it not stipulated in the record. The plaintiff made no response to the Financial Responsibility Division, at least not until November of 1964 when it forwarded a copy of its letter to Bluford denying him coverage. The original of this letter had gone out to Bluford under date of January 27, 1964.

A lawsuit was filed by the Clingans against Bluford in the state court and Bluford was required to provide his own defense. In May of 1964 a judgment went down against him for $5,185.00 in favor of Henry Clingan and for $10,-000.00 in favor of Linda Clingan. These judgments, plus the cost of Bluford's defense, which is agreed to have been in the sum of $750.00, constitute the claims of the defendants against the plaintiff in this lawsuit.

Upon this state of facts it is contended by the plaintiff that Bluford is not an insured under the policy, both by reason of having used the automobile at the time of the accident without either the express or implied permission of the named insured and by reason of having used the automobile for a non-covered business use. The defendants, upon the other hand, contend that Bluford was an insured under the policy as he had both the express permission of Gene McGee, who as the real owner and exclusive user of the automobile was the insured authorized to give permission, and therefore likewise had the implied permission of Mrs. McGee, the named insured. The defendants further contend that in any event the plaintiff was estopped to deny coverage by reason of its failure to advise the Financial Responsibility Division of its denial of coverage. The defendants seek to recover the full amount of the judgments in favor of the Clingans and the reasonable cost of Bluford's defense in the sum of $750.00.

The first issue for resolution by the Court therefore is whether, under the above stated facts and the terms of the policy, which are stipulated, Bluford was an insured. The relevant language in the policy in this respect is as follows:

"The following are insureds under Part I: . . .

"(1) The named insured and any resident of the same household.

"(2) Any other person using such automobile provided the actual use thereof is with the permission of the named insured . . .

\* \* \* \* \* \*

"Under Part I 'named insured' means the individual named in Item I of the declaration . . ."

Since Bluford was driving the insured automobile not only without the knowledge and permission of the named insured, but against her express instructions, it is apparent that he could be an omnibus insured only if Gene McGee, the son of the named insured, were held to be authorized to grant permission for use of the car.

As a general rule, where the named insured in an automobile liability insurance policy grants permission to another to use the automobile but expressly instructs such permittee not to allow anyone else to drive the automobile and, in violation of that instruction, the permittee does permit a third person to drive, it is held that such third person driver is not an additional insured. American Automobile Ins. Co. v. Jones, 163 Tenn. 605, 45 S.W.2d 52; Pollard v. Safeco Ins. Co., Tenn.App., 376 S.W.2d 730; 7 Am.Jur.2d, "Automobile Insurance," Sec. 116. However, where the insured car is purchased by the insured for the exclusive use of a minor, there is a split of authority between those courts holding that authority to delegate permission will be assumed from the fact that the permitee has general custody of the car and those holding that no such authority will be implied. 7 Am.Jur.2d "Automobile Insurance," Sec. 116. This exact issue does not appear to have ever been ruled upon in Tennessee. The better rule would appear to be that the named insured may expressly forbid the use of the car by anyone other than the permittee, even though the latter has exclusive use of the car. Hamm v. Camerota, 48 Wash.2d 34, 290 P.2d 713; Baesler v. Globe Indemnity Co., 33 N.J. 148, 162 A.2d 854. Moreover, this would appear to be in accord with the holding of the Tennessee Court in the case of Messer v. American Mutual Liability Ins. Co., 193 Tenn. 19, 241 S.W.2d 856, wherein the Court held that where the named insured gave her son permission to use the car but instructed him not to let anyone else use the car, a third person using the car with permission of the son would not be an additional insured. See also American Automobile Ins. Co. v. Jones, 163 Tenn. 605, 45 S.W.2d 52; Card v. Commercial Casualty Ins. Co., 20 Tenn.App. 132, 95 S.W.2d 1281; 7 Am.Jur.2d "Automobile Insurance," Sec. 116. The Court therefore concludes that Bluford had neither the express nor the implied permission of the named insured to use the insured car and consequently he would not be covered as an additional insured under the terms of the policy.

The remaining issue for decision by the Court resolves itself into determining whether the plaintiff is estopped to assert its lack of coverage of Bluford. It is the insistence of the defendants that the plaintiff's failure to affirmatively notify the Division of Financial Responsibility of the State of Tennessee of its denial of coverage upon Bluford would operate to estop or prevent the plaintiff from now asserting such denial of coverage. In support of this position the defendants rely principally upon the case of Erwin v. State Farm Mutual Automobile Ins. Co., (D.C., E.D.Tenn., 1964) 232 F.Supp. 530, and the cases therein cited, particularly those from the State of Wisconsin. Upon the other hand, the plaintiff contends that the Tennessee Financial Responsibility Law places no responsibility upon the insurer to make any report or to do anything, so that the plaintiff's actions or failure to act could not form a basis for an estoppel.

The parties have cited no Tennessee authority upon the issue here presented other than the Erwin case, supra, and none has come to the attention of the Court. The Erwin case involved a somewhat similar claim of estoppel arising under the Tennessee Financial Responsibility Law. There the plaintiff brought suit against an automobile liability in-

surance carrier seeking to recover the amount of a judgment she had obtained as a personal injury claimant against the driver of an automobile insured by the defendant. The undisputed facts were that the insurance carrier was notified by its insured at the time of the accident, but had received no notice of any lawsuit against the insured. The insurance carrier asserted the policy defense of non-cooperation on the part of its insured in that he had not notified the carrier of the accident lawsuit and it had therefore had no opportunity to appear and defend the action. The plaintiff in turn contended that the insurance carrier was estopped to assert the policy defense of non-cooperation by the insured in view of the fact that it had earlier confirmed coverage under the Tennessee Financial Responsibility Law. The Court, after noting authority from other jurisdictions, principally the State of Wisconsin, stated:

"It is plausible to assume that if an insurance company filed a paper with a safety department of a state setting out that an automotive vehicle involved in an accident was covered in accord with the state financial responsibility law, it would estop the insurance company from escaping liability for reasons existing at the time such report is made."

However, the Court went on to hold that the insurance carrier would not, by reason of having filed notice of coverage under the Tennessee Financial Responsibility Law, be estopped to assert a policy defense which arose or which the carrier first became aware of after the filing of the notice of coverage under the Financial Responsibility Law.

The rule asserting an estoppel by reason of coverage having been confirmed by the insurer under a state financial responsibility law is well summarized in the case of Behringer v. State Farm Mutual Automobile Ins. Co., 275 Wis. 586, 82 N.W.2d 915, as follows:

"We are therefore constrained to hold that, when a company has through an authorized officer, em-

ployee, or agent filed an SR–21 with the commissioner for the purpose of complying with the Safety Responsibility Law, the company cannot thereafter deny liability [under] its policy because of any act occurring, or fact existing, as of the time of such filing, which it then knew, or could have known through the exercise of due diligence. In other words, the legal effect of filing an SR–21 under such circumstances is to conclusively certify that under the facts then existing its policy insured both the named owner and the named operator of the particular vehicle described in the SR–21 as to which the same was filed."

This rule has been followed in a number of other Wisconsin cases. Shultz v. Hastings, 5 Wis.2d 625, 92 N.W.2d 846; Laughnen v. Griffiths, 271 Wis. 247, 73 N.W.2d 587; Prisuda v. General Casualty Co., 1 Wis.2d 166, 83 N.W.2d 739; Henthorn v. M.G.C. Corp., 1 Wis.2d 180, 83 N.W.2d 759, 79 A.L.R.2d 142; Kurz v. Collins, 6 Wis.2d 538, 95 N.W.2d 365. See also 7 Am.Jur.2d, "Automobile Insurance," Sec. 7.

■ The plaintiff, without reference to case authority from other jurisdictions, appears to contend that no estoppel could be asserted against it both because it made no report of coverage upon Bluford under the Tennessee Financial Responsibility Law and because it had no legal duty to report in any respect in this regard under the law. Considering the latter contention first, it does not appear that any provision is made in the Tennessee Financial Responsibility Law whereby an insurance carrier is required to report coverage or lack of coverage with respect to an accident. Section 59–1201 et seq., T.C.A. The only provision in the law in this respect appears to be contained in Sections 59–1203(b) and 59–1206(c), T.C.A., where it is stated as follows:

*"59–1203 * * ***

*\* \* \* \* \* \**

453

"(b) The form of accident report required under this section shall contain information sufficient to enable the commissioner to determine whether the requirements for a deposit of security under this chapter are inapplicable by reason of the existence of insurance or other exceptions specified in this chapter, and the commissioner may rely upon the accuracy of such information unless and until the commissioner has reason to believe that the information is erroneous."

"59–1206 * * *

*      *      *      *      *      *

"(c) The commissioner may rely upon the accuracy of the information in the report of an accident as to the existence of insurance or a bond unless and until the commissioner has reason to believe that the information is erroneous."

However, the existence of a legal duty is not a prerequisite to the assertion of an estoppel. An equitable duty is sufficient. Gibson's Suits in Chancery, 5th Ed., Sec. 77; 10 Am.Jur., "Estoppel," Secs. 34 and 44. The issue, therefore, is whether the insurer had any equitable duty with regard to confirming or denying coverage upon Bluford under the Tennessee Financial Responsibility Law. It would appear that it did. The practice of the State Director of Financial Responsibility seeking confirmation or denial of insurance coverage from the insurance carrier was an established procedure known to the insurer and participated in by the insurer. While it is contended that the insurer made no report, it is stipulated that the insurer was aware of the "negative approach" used by the Director whereby its failure to affirmatively advise of non-coverage of an automobile owner or operator who had previously reported coverage to the Financial Responsibility Division would act as confirmation of coverage by the insurer. Silence, where a duty to speak exists, may form the basis of an estoppel. Gibson's Suits in

Chancery, 5th Ed., Sec. 77; 10 Am.Jur., "Estoppel," Secs. 34 and 44.

No issue is raised in the brief of either party with respect to the presence or absence of other elements of an estoppel, such as reliance by and detriment to the person asserting the estoppel. It would appear, however, that these elements were present insofar as the tort claimants, Henry Clingan and Linda Clingan, are concerned. For they were entitled to have the sanctions of the Financial Responsibility Law applied to Bluford, including the posting of a financial deposit or other security by him under penalty of revocation of his driving privileges. Sec. 59–1204 et seq., T.C.A. No reliance or detriment would exist, however, insofar as any claim is made on behalf of the defendant Bluford. He was duly advised by the plaintiff of his non-coverage, and could not have been misled to his detriment by failure of the plaintiff to notify the Division of Financial Responsibility of his non-coverage. Upon the contrary, he was the beneficiary of this action.

The Court is of the opinion, therefore, that, as to the defendants, Henry Clingan and Linda Clingan, the plaintiff is estopped to assert its non-coverage of the driver Bluford under its automobile liability insurance policy by its failure to timely advise the Director of the Division of Financial Responsibility of its non-coverage, thereby confirming coverage under the existing practice known by the plaintiff to have been followed under the Tennessee Financial Responsibility Law. The proper rule in this regard would appear to the Court to be that an automobile liability insurance carrier, who, by confirmation or admission of coverage under the Motorists Financial Responsibility Law, relieves the insured of the sanctions of the law to the detriment of an automobile accident claimant will thereby be estopped to assert against such accident claimant any grounds for non-coverage or any policy defense known by the carrier to have existed at the time of its confirmation or admission of coverage. Not only is this conclusion supported by the Erwin v.

454

State Farm Mutual Automobile Liability Ins. Co. case, supra, but it is also supported by authority in other jurisdictions in addition to the Wisconsin authority cited above. In the case of Simmons v. Civil Service Employees Ins. Co., 57 Cal. 2d 381, 19 Cal.Rptr. 662, 369 P.2d 262, the insurance carrier failed to respond to the Financial Responsibility Department and failed to state whether or not coverage existed. The insurance carrier in fact did not have a liability policy at all, but under the facts of the case the Court held that the insurance company was estopped to claim that it did not have such policy. In the case of Hartford Accident & Indemnity Co. v. Come, 100 N.H. 177, 123 A.2d 267, the Court held that the insurance carrier was liable because it failed to notify the commissioner that its policy would not cover the accident when it had a duty to disclose a lack of coverage. In the case of Erwin v. State Farm Mutual Automobile Liability Ins. Co., supra, although the Court reached the ultimate conclusion that no estoppel would apply as noted above, it did so upon the ground that the policy defense first arose *after* confirmation of coverage under the Financial Responsibility Law. In the present case the facts with regard to non-coverage were known to the insurance carrier and were confirmed by letter from the carrier to the insured *before* coverage was confirmed under the Financial Responsibility Law by the action of the carrier.

A judgment will accordingly enter against the plaintiff and in favor of the defendants, Henry Clingan and Linda Clingan, to the extent of the plaintiff's liability under the terms of the insurance policy here involved. The said defendants have asserted a claim in their answer for recovery of the full amount of their judgments against Bluford, but no evidence exists in the record that would warrant holding the plaintiff liable other than in accordance with the terms of its policy. Likewise, no evidence was submitted with respect to the separation of any property damage claim from the personal injury claims. Should the par-

ties be unable to agree upon a settlement of any issue in this respect, the same may be submitted to the Court and the Court will reopen the proof for this purpose if necessary. A judgment will enter in favor of the plaintiff with respect to the claim of defendant Bluford for failure of the plaintiff to provide the said defendant with a defense in the accident lawsuit. This opinion will constitute the findings of fact and conclusions of law of the Court.