Merrimack
No. 82-332

CONCORD GROUP INSURANCE COMPANIES

v.

LUMBERMANS MUTUAL CASUALTY COMPANY
JANET WADE, PHILIP AND MARY–ANN LAJEUNESSE, AND
JOSEPH AND MAE NASSER

February 3, 1984

*Burns, Bryant, Hinchey, Cox & Shea*, of Dover (*Paul R. Cox* and *William E. Boc* on the brief, and *Mr. Boc* orally), for the plaintiff.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*George R. Moore* on the brief and orally), for the defendant Lumbermans Mutual Casualty Company.

*Law Offices of James J. Kalled*, of Ossipee (*Robert G. Whaland* on the brief and orally), for the defendants Philip and Mary-Ann LaJeunesse and Joseph and Mae Nasser.

BATCHELDER, J.   This is an appeal from a declaratory judgment, entered by the superior court, concerning insurance coverage for a vehicular accident. The issue presented is whether the defendant insurance company is estopped from denying coverage under its personal injury protection (PIP) policy because of its failure to comply with the notice requirements of RSA 268:5, IV (now codified at RSA 264:3, IV). For the reasons set forth below, we hold that the insurer under a PIP policy does *not* have a statutory obligation to notify the department of safety of its decision to deny coverage within fifteen days of its having learned of the accident.

Janet Wade, a Florida resident, was insured by Lumbermans Mutual Casualty Company (Lumbermans) through a Florida insurance agency under a PIP policy on a 1968 Oldsmobile Cutlass, which policy, by definition, provides no coverage for liability to third parties. While driving the insured vehicle on November 5, 1978, Janet Wade was involved in a motor vehicle accident with two other vehicles in Windham, New Hampshire. Injuries were sustained by the defendants Philip and Mary-Ann LaJeunesse and Joseph and Mae Nasser.

Janet Wade filed a motor vehicle accident report with the New Hampshire Department of Safety on November 13, 1978. It is uncertain whether the department of safety ever sent form FR-21 to Lumbermans asking it to verify coverage. On December 4, 1978, knowledge of the accident was received by the Florida insurance agency through a telephone call from James Kalled, Esq., attorney for Mr. and Mrs. LaJeunesse and Mr. and Mrs. Nasser. The Fort Lauderdale claims office of Lumbermans received notice of the accident from the Florida insurance agency on December 7, 1978. The New Hampshire office of Lumbermans first became aware of the accident on January 2, 1979, by way of a letter from Ralph Stein, Esq., attorney for the operator of the third automobile involved in the accident. By letter dated January 30, 1979, Lumbermans notified the department of safety and the parties to the accident that it was denying liability coverage for the accident of November 5, 1978.

The plaintiff, Concord Group Insurance Companies, a carrier of uninsured motorist insurance, filed a petition for declaratory judgment in the superior court seeking a declaration that Lumbermans was estopped from denying coverage because of its failure to comply with the fifteen-day notice requirement of RSA 268:5, IV. The Master (*William H. M. Beckett*, Esq.) recommended that Lumbermans not be estopped, and the Superior Court (*Cann*, J.) approved the master's report.

The plaintiff appeals from the master's report and seeks a ruling from this court that all insurance carriers be absolutely estopped from denying coverage if they fail to give the proper notice within fifteen days of their having learned, from any source, of an accident involving their insured.

RSA 268:5, IV (now codified at RSA 264:3, IV) reads as follows:

> "Within 15 days after the receipt of notice of such accident, the insurance carrier . . . which issued such policy shall notify such director . . . in case such policy was not in effect at the time of such accident. If no such notification is received within such 15 days, such director may assume that such a policy was in effect at the time of the accident."

As we have consistently held, failure to abide by the dictates of this statute estops an insurance carrier from denying coverage. *See Auclair v. Allstate Ins. Co.*, 118 N.H. 626, 631, 392 A.2d 1197, 1200 (1978); *Hartford Accident and Indemnity Co. v. Come*, 100 N.H. 177, 185–86, 123 A.2d 267, 273–74 (1956).

We are first presented with the question from what point the fifteen days is to be measured. The defendant Lumbermans argues that it did not receive notice from the department of safety via form FR-21, and therefore should not be estopped from denying coverage. Form FR-21 requests the insurance carrier to verify that a person who has filed an accident report with the department of safety, listing that insurer as providing liability insurance coverage for the accident, in fact is covered. The defendant Lumbermans would have us hold that its receipt of form FR-21 is a precondition to its obligation to notify the department of safety within the fifteen days of its decision to deny coverage.

This argument was addressed in *Hartford Accident and Indemnity Co. v. Come*, 100 N.H. 177, 123 A.2d 267 (1956). In *Come*, the insurer did not receive notice from the department of safety, but rather learned of the accident involving its insured "from its issuing

broker and from its own investigation." *Id.* at 185, 123 A.2d at 273. In rejecting the argument, we stated:

> "We are of the opinion that by virtue of the statute and even if inquiry was not made by the Commissioner, the company was under an obligation to the public, and to the Motor Vehicle Commissioner representing the public . . . to notify the Commissioner in compliance with RSA 268:5 IV that its insurance did not satisfy the statutory requirements of security for the payment of any judgment arising out of [the accident in question]. . . . The plaintiff's duty to notify the Commissioner arose on 'the receipt of notice of such accident,' whether notice came from the Commissioner or the insured."

*Id.*

■ This holding in *Come* is consistent with our holding in *Bowlan Lumber Co. v. Lemire*, 120 N.H. 465, 468, 416 A.2d 1371, 1373 (1980). In *Bowlan*, we held that "actual notice," although it be defective notice under the operative statute, RSA 281:18 (Supp. 1983), was sufficient to assert a claim for workmen's compensation so long as the employer did not suffer any prejudice thereby. The legislature in RSA 268:5, IV (now codified at RSA 264:3, IV) does not expressly delimit the modes by which notice may be received by the insurance carrier for the insurance carrier to incur the duty to notify the department of safety. *Cf.* RSA 281:18 (Supp. 1983). Consequently, we see no reason to reexamine our holding in *Come*.

■■ Sound public policy supplies the rationale for this strict obligation placed on an insurance company: Once the department of safety is made aware of the absence of adequate coverage, it is able to take steps to protect the public from the hazard represented by a driver on the State's highways who lacks the requisite proof of financial responsibility. *See* RSA 264:3, I. We hold that receipt of form FR-21 is not a precondition to an insurance company's obligations under RSA 264:3, IV (formerly RSA 268:5, IV). We hold further that its statutory obligations arise from the point that the insurance company receives notice of the accident involving an insured or an insured's vehicle, from *any* source, in its home office, its New Hampshire office, or the New Hampshire office of one of its agents. We do not believe that this places an impossible burden on insurance companies, as they are in a position to allocate adequate resources to process such information in an expeditious manner so that their obligation to the public under RSA 264:3, IV (formerly RSA 268:5, IV) can be discharged.

■ Since Lumbermans received notice of the accident in New Hampshire on January 2, 1979, and did not notify the department of safety until January 30, 1979, it failed to meet the fifteen-day deadline.

The defendant Lumbermans has put forth an additional argument in an attempt to escape the estoppel effect of its failure to notify the department of safety in a timely manner. It states that the PIP policy which it issued to Janet Wade in Florida is not a "motor vehicle liability policy" within the meaning of RSA chapter 268 (now codified at RSA chapter 264). It points to the fact that a PIP policy contemplates only "first party" coverage and so does not undertake to provide liability coverage for third parties who might be injured by the actions of the named insured. Since it is not a liability policy, Lumbermans argues, the notification requirements of RSA 268:5, IV do not apply.

The master found that the PIP policy issued by Lumbermans was not a liability policy within the meaning of RSA chapter 268 (now codified at RSA chapter 264) and accordingly concluded that Lumbermans was not to be estopped from denying coverage to Janet Wade. We agree with the master in his placement of this case in that narrow band of exceptions to the statutory notification requirement which our decisions have carved out. *See, e.g., Shelby Mutual Ins. Co. v. Carrier*, 122 N.H. 754, 756, 449 A.2d 1229, 1230 (1982) (information in form FR-21 inaccurate); *Berkshire Mut. Ins. Co. v. Glover*, 122 N.H. 369, 371–72, 444 A.2d 567, 568 (1982) (no policy in effect at time of the accident). In *Farm Bureau Mutual Insurance Company v. Geer*, 107 N.H. 452, 224 A.2d 580 (1966), the party responsible for the accident purchased liability insurance after the accident and listed that insurance on the accident report filed with the department of safety. We held that the provisions of RSA chapter 268 cannot apply to a nonexistent policy, or one which was negotiated only after a loss occurs. *Id.* at 457, 224 A.2d at 584. We concluded that the doctrine of "estoppel or waiver cannot be extended to create a primary liability or, in effect, to make a contract between the parties where none existed. . . . We further conclude[d] that the Legislature did not intend to create absolute liability under RSA 268:5 IV." *Id.* (Citations omitted).

■ In *Hein v. Nationwide Mutual Insurance Company*, 106 N.H. 378, 382, 213 A.2d 197, 200 (1965), we held that an insurance company's failure to deny uninsured motorist coverage in its notification to the department of safety did not estop it from denying such coverage to its insured. In *Hein* we made a pertinent distinction:

"[U]ninsured motorists' insurance is not liability insurance in any sense, but resembles limited accident insurance. It does not undertake to protect the insured against liability he may incur to others, as does liability insurance, but rather insures him against losses occasioned to him by a limited group of tort feasors."

*Id.* at 381, 213 A.2d at 199. Likewise, the Lumbermans policy at issue here provides limited accident insurance and does not undertake to protect the insured against liability that he may incur to others.

■ In sum, we hold that inasmuch as Lumbermans did not issue a liability policy to its insured, it does not fall within the provisions of RSA 268:5, IV (now codified at RSA 264:3, IV) and so is not estopped from denying liability coverage to its insured, Janet Wade.

*Affirmed.*

SOUTER, J., did not sit; BROCK, J., dissented for the reasons stated in his dissent in *Green Mountain Insurance Co. v. U.S. Fidelity & Guaranty Co.* (decided this date); the others concurred.