Merrimack
No. 82-466

GREEN MOUNTAIN INSURANCE COMPANY

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY

February 3, 1984

*Burns, Bryant, Hinchey, Cox & Shea*, of Dover (*Paul R. Cox* and *William E. Boc* on the brief, and *Mr. Boc* orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Theodore Wadleigh* on the brief and orally), for the defendant.

BATCHELDER, J.   This is an appeal from a declaratory judgment, entered by the superior court, concerning insurance coverage for a vehicular accident. The issue presented is whether the defendant

insurance company is estopped from denying coverage under its liability policy because of its failure to comply with RSA 268:5, IV (now codified at RSA 264:3, IV). For the reasons set forth below, we hold that the defendant is so estopped and, therefore, affirm the judgment of the trial court.

On November 4, 1978, Michael Brown was involved in an accident while operating a motor vehicle belonging to RIC, Inc. As a result of that accident, Mark W. Poitras, a passenger in the car, was injured. In November of 1978, United States Fidelity and Guaranty Insurance Company (Fidelity) had issued a business auto insurance policy to Trapper Brown Corporation and RIC, Inc., as named insureds, for certain automobiles owned by them. According to the terms of the policy, anyone operating an automobile owned by a named insured and with the permission of a named insured, in addition to the named insureds, was entitled to coverage. At the time of the accident, Michael Brown was underage and unlicensed. According to the defendant, he was not operating the vehicle with the permission of a named insured and thus was not entitled to coverage.

No motor vehicle accident report of the accident was filed with the department of safety as required by RSA 262-A:67, I (Supp. 1979) (now codified at RSA 264:25, I). Consequently, the department of safety never sent form FR-21 to Fidelity asking it to verify coverage. Fidelity, however, learned of the accident on November 7, 1978, through information received from the insurance agency which had issued the Fidelity policy in question. By letter dated April 27, 1979, Fidelity informed Michael Brown that he was not an insured under the policy and so would not be covered, and also informed Trapper Brown Corporation and RIC, Inc. that they would be provided coverage under the policy. It was not until January 2, 1980, that Fidelity wrote to the department of safety, stating that Fidelity had denied coverage to Michael Brown for the accident of November 4, 1978.

The plaintiff, Green Mountain Insurance Company (Green Mountain), a carrier of uninsured motorist insurance, filed a petition for declaratory judgment against Fidelity in the superior court on July 23, 1980. Green Mountain in its petition alleged that Fidelity was estopped from denying coverage to Michael Brown for his operation of the motor vehicle on November 4, 1978, because Fidelity had failed to comply with the provisions of RSA 268:5, IV. The plaintiff then filed a motion for summary judgment in its favor. The Master (*Frank B. Clancy*, Esq.) recommended that the plaintiff's motion for summary judgment be granted, and the Superior Court (*Nadeau*, J.) approved the master's recommendation.

The defendant appeals from the order granting summary judgment for the plaintiff and argues that it should not be estopped from denying coverage because it had no statutory obligation to notify the department of safety of its decision to deny coverage.

■ RSA 268:5, IV (now codified at RSA 264:3, IV) reads as follows:

"Within 15 days after the receipt of notice of such accident, the insurance carrier . . . which issued such policy shall notify such director . . . in case such policy was not in effect at the time of such accident. If no such notification is received within such 15 days, such director may assume that such a policy was in effect at the time of the accident."

We have consistently held that failure to abide by the dictates of this statute estops an insurance carrier from denying coverage. *See Auclair v. Allstate Ins. Co.*, 118 N.H. 626, 631, 392 A.2d 1197, 1200 (1978); *Hartford Accident and Indemnity Co. v. Come*, 100 N.H. 177, 185–86, 123 A.2d 267, 273–74 (1956).

The first question presented to us is: from what point is the fifteen days to be measured? The defendant argues that it should not be estopped from denying coverage because it did not receive notice from the department of safety through receipt of form FR-21. Form FR-21 asks the insurance carrier to verify insurance coverage for a person who has filed an accident report with the department listing that insurer as providing liability insurance coverage for the accident. The defendant argues that receipt of form FR-21 is a precondition to any obligation to notify the department of safety within the fifteen days of its decision to deny coverage.

■■ In *Concord Group Insurance Companies v. Lumbermans Mutual Casualty Company*, 124 N.H. 440, 444, 471 A.2d 1159, 1161 decided today, we held that

"[R]eceipt of form FR-21 is not a precondition to an insurance company's obligation under RSA 264:3, IV (formerly RSA 268:5, IV). We hold further that its statutory obligations arise from the point that the insurance company receives notice of the accident involving an insured or an insured's vehicle, from *any* source, in its home office, its New Hampshire office, or the New Hampshire office of one of its agents."

*Id.* This holding in *Concord Group* is controlling here. Consequently, since the defendant received notice from its New Hampshire agent

on November 7, 1978, it was obligated to inform the department of safety within fifteen days of that date that it was denying coverage (assuming the agent itself first learned of the accident on that day). Fidelity failed to fulfill this obligation.

The defendant seeks to escape its obligations under RSA 268:5, IV, by urging that there was no liability policy in effect as to Michael Brown, the unlicensed driver involved in the accident in question. It reaches this conclusion by pointing to the fact that its policy was issued to Trapper Brown Corporation and RIC, Inc., and listed them alone as named insureds. Fidelity then argues that since Michael Brown was using a company vehicle without permission, he was not an insured within the coverage provisions of the policy.

The defendant, however, confuses the distinction we have carved out between those cases involving non-existent liability policies and those cases involving existing liability policies which arguably do not provide coverage to the claimant for the accident in question. *See Concord Group Ins. Co's v. Lumbermans Mut. Cas. Co. supra.* In the latter line of cases, we have consistently held that the liability insurer will be estopped from denying coverage, notwithstanding the language of the policy, if it has failed to inform the department of safety within fifteen days of its having learned of the accident involving an insured or an insured's vehicle. *See Auclair v. Allstate Ins. Co.*, 118 N.H. at 631, 392 A.2d at 1200; *Hartford Accident and Indemnity Co. v. Come*, 100 N.H. at 185–86, 123 A.2d at 273–74.

Since Fidelity failed to provide the department of safety with timely notice, it is estopped from denying coverage to Michael Brown.

*Affirmed.*

SOUTER, J., did not sit; BROCK, J., dissented; the others concurred.

BROCK, J., dissenting: The rule adopted by the majority in *Concord Group Insurance Companies v. Lumbermans Mutual Casualty Company*, 124 N.H. 440, 471 A.2d 1159 (1984), and applied in this case, places an unnecessary and unreasonable burden on insurance carriers by taking a much broader view of the "policy" underlying RSA 268:5, IV (now codified at RSA 264:3, IV) than did this court when it decided *Hartford Accident and Indemnity Co. v. Come*, 100 N.H. 177, 123 A.2d 267 (1956).

We found that the carrier in that case "had 'notice of such accident' from its issuing broker and from its own investigation, *and knew that its insured relied upon the policy as evidence of coverage.*"

*Id.* at 185, 123 A.2d at 273 (quoting the former RSA 268:5, IV) (emphasis added). Because we found, as the majority in *Concord Group* notes, that the purpose of the statute is "to protect the public from the hazard represented by a driver on the State's highways who lacks the requisite proof of financial responsibility," *Concord Group Insurance Companies v. Lumbermans Mutual Casualty Company, supra* at 440, 471 A.2d at 1159, and because "[t]his purpose was necessarily apparent to" the carrier in *Come supra*, we held in that case that "the purpose of the statute could be fulfilled only by" the carrier notifying the commissioner within the statutory period. *Id.*

I take this to be a narrowly drawn exception to the procedure contemplated by the statute, which expressly provides that the carrier "shall notify the department *in such manner as it may require. . . .*" (Emphasis added.) To me, this means that the carrier acquires no duty until it is notified of an accident through the well-established procedures which the department has created, or through some means which (as in *Come*) provide substantially identical notice; *i.e.,* the carrier must be alerted to the danger that the statutory purpose will be thwarted if the carrier does not notify the department pursuant to paragraph IV. In my view, this would require, at the least, a finding similar to that in *Come* that the carrier knew its insured was relying upon the policy as evidence of coverage. No such finding appears in the record of either *Concord Group* or the instant case.

Where, as here, the department has developed a comprehensive system of easily followed procedures for the purpose of notifying insurance carriers, we should be reluctant to say that carriers may not rely on that system to alert them to their statutory duties, absent the unusual circumstances found in *Come*. The rule announced by the majority in *Concord Group* will, in practice, force carriers to develop expedited procedures for complying with paragraph IV whenever notice of an accident is received at their home offices, their New Hampshire offices, or offices of their agents in New Hampshire. Because it is now the earliest date of notice which controls the carrier's duties, and because the official notice from the department to the carrier may often be sent after the carrier receives other notice of an accident, the practical application of the rule will make a sizable part of the established system superfluous and will result in confusion and in an expenditure of resources by the carriers that was clearly not contemplated by the statute.

This court has recently held that the former RSA 268:5, IV should not be construed to impose unreasonable burdens on an insurance carrier. *Shelby Mutual Ins. Co. v. Carrier,* 122 N.H. 754, 756, 449 A.2d 1229, 1230 (1982). Because I believe that the policies underly-

452

ing the statute will be adequately served by the procedures that the department has adopted pursuant to that same statute, or their functional equivalent, I respectfully dissent.