[No. 37593. Department Two. July 8, 1965.]

MAE LAPOINT et al., Respondents, v. ROBERT W. RICHARDS et al., Defendants, TEMPERANCE INSURANCE EXCHANGE, Appellant.*

*Reported in 403 P.2d 889.

*D. Scott Sandelin,* for appellant.
*David L. Jamieson,* for respondents.

Barnett, J.†—The stipulated facts reveal that about June 2, 1959, one Stanton Weston, an agent of the garnishee defendant, Temperance Insurance Exchange (hereinafter referred to as Temperance), received an application for automobile liability insurance submitted with $30.80 in cash by one Norman Becker in behalf of Robert W. Richards. The form on which the application was made was that of another company, not upon a Temperance form, but used by a Mr. Thompson who originally took the application from Mr. Richards. Weston informed Thompson that he needed additional information concerning the policy; and on June 11, 1959, Weston deposited in the mail a letter[1]

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

[1]                                "Weston's Insurance Agency
                                 5030 S. Tacoma Way
                                 Tacoma, Washington
                                 June 11, 1959     Phone HI-4380
"Mr. Robert Richards
8503 John Dower Rd. S W
Tacoma, Washington
Dear Sir:
  "I have and (sic) application for insurance submitted by and (sic) agent of the AAA, which I am pleased to have.  However I will need some additional information before I can bind coverage.
  "If you will give me the following information your policy will be in effect at the time of the post marked date on the return enveloped (sic) supplied you.
  "1.  Occupation & place of employment?  2.  Drivers license #  3.  Wifes name and drivers license #   4.  Date of birth.  5.  Number of citations in the past 3 years.
                             "Respectfully
                             Stanton Weston
                             Stanton Weston"

to Richards at his last known address, requesting additional information as to his occupation, license number, wife's name and license number, date of birth, and number of citations in the past 3 years; and that, if this information was submitted, the policy would be in effect at the time of the postmarked date on the return envelope. As part of the stipulated facts it is stated that there is no evidence in the records as to whether or not this letter was received by Richards.

On June 17, 1959, Weston learned that Richards had had an automobile accident the day before. On June 18, 1959, Weston sent a letter to Richards returning the premium of $30.80, stating that there was no coverage for the June 16th accident because he had not received the information requested in the June 11th letter. Subsequently, in a reservation of rights agreement dated October 1, 1959, between Richards and Temperance, wherein Temperance reserved the right to deny all coverage to Richards, the parties agreed to investigate the facts surrounding the application for insurance and Richards reserved the right to maintain that he was insured by Temperance. Temperance also agreed to make a filing with the Financial Responsibility Division of the Department of Licenses (hereinafter called the department) to the effect that a policy of insurance was in force with Temperance for Richards in order to preserve his driving privileges while the matter was being investigated. It was further agreed that Temperance had the right to negotiate or settle any claim without waiver of its rights, including the right to deny any liability to Richards.

Temperance made a filing with the department, and the Washington Financial Responsibility Insurance Certificate (SR 22) showed it to be "Effective from 6-11-59 to 12-11-59." However, on the SR 22, the space after the phrase "Certificate Required because of" is left blank. It is emphasized that the filing was made in order to preserve Richards' driving privileges under the Financial Responsibility Act of this state. There is no evidence in the record as to Temper-

ance receiving any consideration for the filing, other than the October 1st reservation of rights agreement.

In the trial which litigated the issues involved in the June 16, 1959, accident, a judgment was obtained against Robert Richards and wife for $3,500 in favor of Mildred Winchester, $4,000 for Mae LaPoint, and $100 to the guardian ad litem for Tim LaPoint, together with their costs. The judgment was not appealed.

There was a tender of defense to Temperance, but the same was duly refused. The judgment was entered after the time for appeal had expired. The judgment apparently was unsatisfied, hence this garnishment proceeding.

The trial court concluded that there was insurance coverage under a valid policy at the time of the accident in question. We disagree.

The existence of an insurance policy is a matter of contract law, since insurance involves a contractual relationship between the insurer and the insured. *Ohio Cas. Ins. Co. v. Nelson,* 49 Wn.2d 748, 306 P.2d 201 (1957); *McGregor v. Inter-Ocean Ins. Co.,* 48 Wn.2d 268, 292 P.2d 1054 (1956); *Trinity Universal Ins. Co. v. Willrich,* 13 Wn.2d 263, 124 P.2d 950, 142 A.L.R. 1 (1942). Under the stipulated facts, there is no evidence that the June 11th letter was received by Richards. Also, there is not a scintilla of evidence that Richards sent back the information requested in the June 11th letter. The letter specified the date when the policy would become effective, *i.e.,* " . . . at the time of the post marked date on the return enveloped (sic)." If the return letter was never sent, and there was no evidence that it was, there could have been no postmarked date and hence no contract. The retention of a premium in and of itself does not constitute a contract. *Basinsky v. National Cas. Co.,* 122 Wash. 1, 209 Pac. 1077 (1922). We hold that there was no existing insurance contract between the parties.

Having so concluded, the question remains whether or not the filing of SR 22 by Temperance with the director in accordance with RCW 46.28.010, *et seq., infra,* prevents it from thereafter raising the defense that the certified

policy is not in truth and in fact a policy of insurance as to the public, the director, and third parties.

The relevant portion of the pertinent statutes as they existed in June, 1959, at the time of the accident, follow:

RCW 46.28.010:

(1) The operator of any motor vehicle involved in an accident . . . shall . . . report the matter in writing to the director. The form of such report shall be prescribed by the director, shall require facts to enable the director to determine whether the requirements for deposit of security under RCW 46.28.020 are inapplicable by reason of the existence of insurance or other exceptions specified in this chapter . . . .

RCW 46.28.020:

Within thirty days after receipt of a report of such an accident the director shall determine, with respect to both the operator and the owner of each motor vehicle involved in the accident and reported upon, except as to persons exempt from the requirement of security under this chapter, the amount of security sufficient, in his judgment, but within the limits prescribed in this chapter, to satisfy all judgments for damages resulting from such accident as may be recovered against such operator or owner or both. Upon making such determination the director shall in writing forthwith notify each such operator and owner of the security so required. If within thirty days after the date of mailing of notice by the director of the requirement of security such operator or owner has not deposited with the director the kind and amount of security so required, and except as provided in RCW 46.28.030 and 46.28.040, the director shall forthwith suspend the operator's license or nonresident's operating permit of such operator or owner.

RCW 46.28.040:

(1) The requirements as to security and suspension in RCW 46.28.020 shall further not apply to:

(a) Any operator or owner if such owner had in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved in such accident.

(b) Any operator, if not the owner of the motor vehicle, if there was in effect at the time of the accident an automobile liability policy or bond with respect to his operation of motor vehicles not owned by him.

RCW 46.28.050:

No insurance policy or bond shall be deemed effective under RCW 46.28.040 unless such policy or bond:

(1) Is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and cost, of not less than ten thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in damage to or destruction of property, to a limit of not less than five thousand dollars because of damage to or destruction of property of others in any one accident.

Manifestly the purpose of the Financial Responsibility Act is for the protection of the public. We observed in *State ex rel. Ralston v. Department of Licenses,* 60 Wn.2d 535, 541, 374 P.2d 571 (1962):

The need for reasonably effective regulatory procedures with respect to those who operate motor vehicles is indeed great. Furthermore, the magnitude of the problems involved increases with each year.

The sections of our statutes involved here (now recodified as RCW 46.29.060 *et. seq.*), like their California counterpart, are directly intended for the benefit of owners and drivers of motor vehicles as a means of forestalling suspension of the license of the driver and of the registration of the vehicle and, more fundamentally, designed to give monetary protection to that ever changing and tragically large group of persons who, while lawfully using the highways themselves, suffer serious injury through the negligent use of those highways by others. *Bonfils v. Pacific Auto Ins. Co.,* 165 Cal. App. 2d 152, 331 P.2d 766 (1958); *Continental Cas. Co. v. Phoenix Constr. Co.,* 46 Cal. 2d 423, 296 P.2d 801, 57 A.L.R.2d 914 (1956).

It is evident that the purpose of the SR 22 form filed in conformance with the above statutes was to protect Richards' driving privileges by proving insurance in lieu of security or bond. The state has another purpose too. The state has an interest in the giving of monetary protection to per-

sons using the highways themselves who suffer injury through the negligent use of those highways by others.

Appellant contends that it secured the certificate of insurance in order to permit Richards to retain his driving privileges and for no other purpose. However, from a reading of the statutes, it is seen that Richards had two alternatives if he desired to retain his operator's license. He could either (1) post security which was sufficient in the opinion of the director to satisfy all judgments for damages resulting from such accident in accordance with RCW 46.28.020, or (2) he could obtain a certificate from an insurance company that he had in effect at the time of the accident an automobile liability insurance policy covering the motor vehicle involved in the accident, as provided for in RCW 46.28.040.

RCW 46.28.010, in addition to requiring the reporting of an accident producing damage in excess of $200, provides for the suspension of the license unless a security is deposited to satisfy any judgment for damages resulting from the accident as may be recovered against the operator. This deposit of security and suspension of license did not apply if there was a liability policy or bond.

Richards came under the exception specified in RCW 46.28.010, and set forth in RCW 46.28.040, that is, the existence of insurance policy as evidenced by the SR 22 form which was filed by Temperance certifying that Richards had a policy of insurance with it.

It is not argued by Temperance that the accident is not covered by the policy. This is not a case where it is sought to void the policy for breach of any condition for any other reason. This is not a situation where it is sought to impose upon the insurance company which files an SR 22 form a liability greater than that originally contracted.

Temperance knew of the automobile accident at the time it filed the SR 22 form. The reservation of rights agreement was executed October 1, 1959, showing knowledge of an accident on June 16, 1959.

The Wisconsin Supreme Court, in *Behringer v. State Farm Mut. Auto Ins. Co.*, 275 Wis. 586, 593, 82 N.W.2d 915 (1957), stated:

> [W]hen a company has through an authorized officer, employee, or agent filed an SR-21 with the commissioner for the purpose of complying with the Safety Responsibility Law, the company cannot thereafter deny liability upon its policy because of any act occurring, or fact existing, as of the time of such filing, which it then knew, or could have known through the exercise of due diligence.

This passage was quoted in the later case of *Kurz v. Collins*, 6 Wis.2d 538, 95 N.W.2d 365 (1959).

In *Behringer, supra,* greater liability was imposed upon the insurer than originally contracted for when it issued the policy by the filing of the SR form. The court held that it was barred from asserting an exclusion clause in its policy as a defense if, in order to do so, it must rely upon occurrences of facts which it could have discovered by the exercise of due diligence within the 60-day period allowed by the statute for the filing of the SR form.

*Seaford v. Nationwide Mut. Ins. Co.*, 253 N.C. 719, 117 S.E.2d 733, 85 A.L.R.2d 496 (1961), cited by the appellant, reaches a contrary result with reference to an exclusionary clause and holds that the filing of the SR form does not bar the insurer from later denying coverage. There was no contention that a contract of insurance had not been entered into. There was no denial that a policy had not been issued. The court held that a tractor-trailer which was operated by the insured as employee of the owner was an automobile within the liability policy covering owned or nonowned automobile, but excluding nonowned automobile used in the insured's "business or occupation," notwithstanding that the insured was employed to operate the tractor for one trip only. Consequently, there was no insurance coverage where the insured was involved in an accident while operating the tractor-trailer.

It is not appellant's contention that it has a policy defense as in *Behringer and Seaford, supra.* It argues that, contrary

to its public certification of the existence of the liability insurance policy of Richards, no such policy exists. The facts in this case do not require us to determine whether or not policy defenses such as those in *Behringer* and *Seaford* would be sustained. Suffice it to say that it is the duty of the director to require that the existing policy of insurance meet the requirements prescribed by RCW 46.28.050, *supra*.

It has been suggested by counsel for appellant that the director had not required security and had not suspended Richards' license as a matter of fact and that this enabled Temperance to escape liability.

The New Jersey Court of Errors answered a similar contention in *Ambrose v. Indemnity Ins. Co. of North America,* 120 N.J.L. 248, 199 Atl. 47 (1938). It held that where one who is required by the Commissioner of Motor Vehicles to produce proof of financial responsibility pursuant to statute, and who may have arranged in advance with an insurance company for a policy conforming to the statute, in such case the insurer could not escape the responsibility it undertook even though the commissioner had not required proof of financial responsibility. The court stated, p. 250:

> It has been held by our courts in several decisions that where a policy . . . is issued to an assured who has had such an accident as would entitle the commissioner of motor vehicles to require proof of financial responsibility, the policy is in effect in the same manner and to the same extent as if it had been issued in pursuance of the demand of the commissioner.

The same court said in *Steliga v. Metropolitan Cas. Ins. Co. of New York,* 113 N.J.L. 101, 103, 172 Atl. 793 (1934), affirmed, 114 N.J.L. 156, 176 Atl. 331 (1935):

> It is urged that because the policy was not issued at the demand of the commissioner of motor vehicles, it therefore had no legal status. We do not agree with this proposition. It is true the act directs that the commissioner shall require proof of responsibility in such cases, but it does not make such action a condition precedent to the validity of insurance effected in accordance with its terms. The insured, being in the class requiring such proof, was not

obliged to wait until the commissioner should act before complying with the terms of the act by establishing through insurance the proof of responsibility which the law required. It was likewise optional with the company to assume such liability, but if it did so it could not escape the responsibility thus undertaken.

We are here confronted with a situation where the appellant, in order to protect the driving rights of Richards, certified that Richards had in effect at the time of the accident an automobile liability policy with it. The certificate was an administrative document for the convenience of the state. It was proof of the existence of "insurance" and thereby made inapplicable the requirements as to security and suspension of driving privileges as provided for in RCW 46.28.020, *supra.*

We must assume that the director would have complied with RCW 46.28.020, *supra,* and required security to satisfy all judgments resulting from the accident as could have been recovered, but for the certificate of other insurance.

To permit the appellant to escape liability by way of the reservation of rights agreement between it and Richards would be a travesty.

Notwithstanding its knowledge of the accident and after there was a sufficient length of time to become aware of its contractual obligations, if any, appellant filed the certificate with the department in which it categorically stated the existence of a policy of insurance.

By this statement, it has induced the department to forego the requirement of security from Richards or suspend his operator's license.

Keeping in mind that the purpose of the statute is for the protection of the public, it would be against the public policy of the state to permit appellant to now disclaim what it has claimed on the public records to be true.

The term "public policy," . . . embraces all *acts* or contracts which tend clearly to injure the public health, the public morals, *the public confidence in the purity of the administration of the law,* or to undermine that sense

of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel. (Italics ours.) 6 R.C.L. § 120, p. 712.

This is quoted with approval in *Goodier v. Hamilton,* 172 Wash. 60, 62, 19 P.2d 392 (1933).

The public policy of this state does not permit the judicial stamp of approval on a procedure whereby private agreements of parties are allowed to dispute the public certification as to the existence of a policy of automobile liability insurance. To do so would effectively nullify the plain legislative purpose of the protection of the public, and continued public confidence in the purity of the administration of the financial responsibility law would be challenged.

Judgment affirmed.

ROSELLINI, C. J., DONWORTH, FINLEY, and HAMILTON, JJ. concur.

September 29, 1965. Petition for rehearing denied.