DONALD BREEN *v.* THE AETNA CASUALTY AND SURETY COMPANY ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued March 3—decided May 17, 1966

*J. Kenneth Bradley,* with whom were *Robert J. Cooney* and, on the brief, *Edgar W. Bassick III,* for the appellant (named defendant).

*Warren W. Eginton,* with whom, on the brief, were *Francis J. McNamara, Jr.,* and *John F. Spindler,* for the appellee (plaintiff).

*Jacob D. Zeldes,* with whom, on the brief, were *David Goldstein* and *L. Douglas Shrader,* for the appellee (defendant Anthony, administrator).

SHANNON, J.   This was a declaratory judgment action involving the coverage of a motor vehicle liability insurance policy issued by the named defendant, hereinafter referred to as Aetna, to the plaintiff, covering, for a period of one year beginning September 21, 1958, a 1955 station wagon owned by him.  The policy had been procured from Aetna's New York office by John N. Ledbetter, a relative of the plaintiff, who was, and in the matter acted as, an insurance broker.  He was not an Aetna agent.  The plaintiff at all times lived with his wife, Marion W. Breen, at their home in Bronxville, New York, where the policy stated that the covered car

was ordinarily to be garaged. Ledbetter was a resident of Larchmont, New York, at least until September 1, 1958.

In the early morning of January 25, 1959, the plaintiff was operating the station wagon on the Merritt Parkway, in Greenwich, Connecticut, when he lost control of the car. It overturned, and Mrs. Breen, a passenger in the front seat, died almost immediately as a result of the injuries she sustained. The plaintiff was unhurt, no other car was involved, and there was no property damage except to the plaintiff's car.

Under Connecticut law, interspousal suits are permitted. Under New York law, they are permitted by statute, but under § 167 (3) of the New York Insurance Law, liability to a spouse is not covered by a motor vehicle liability insurance policy "unless express provision relating specifically thereto is included in the policy." Since there was no such express provision in the policy, Aetna made the claim that there was no coverage of this particular accident.

The defendant Lloyd W. Anthony was appointed administrator in Connecticut of Mrs. Breen's estate, and in that capacity, on January 13, 1960, instituted an action in this state against the plaintiff under our wrongful death statute. See General Statutes § 52-555. After institution of that action, Aetna, on January 27, 1960, first disclaimed liability, and this declaratory judgment action was then brought.

The trial court held that the policy covered the plaintiff's liability in the wrongful death action and concluded, as separate and independent grounds for its judgment, (1) that Aetna's special defense that the contract was made in New York was not proven; (2) that the policy contract was to have

its operative effect in Connecticut and, so, would be governed by Connecticut law regardless of where the contract was made; (3) that in any event Aetna had waived, and (4) was estopped from taking advantage of, any exemption from coverage accorded by § 167 (3) of the New York Insurance Law.

For four or five years prior to September 21, 1958, the plaintiff had purchased, through Ledbetter as his broker, annual motor vehicle liability insurance policies from Aetna. The personal injury limits of the policy in question were $100,000 for injuries to any one person, $300,000 for injuries in any one accident and $10,000 property damage for any one accident. The policy covered liability for personal injuries including death "sustained by any person . . . arising out of the ownership, maintenance or use" of the plaintiff's car. In the quoted language relevant to this controversy, the policy did not differ from that of the policy before this court in *Jenkins* v. *Indemnity Ins. Co.*, 152 Conn. 249, 252, 205 A.2d 780. There was no exclusionary provision or any wording even remotely suggesting that interspousal actions were not covered, whether occurring in New York or elsewhere. But there was nothing in the policy indicating that it was made elsewhere than in New York. The general rule is that the validity and the construction of a contract are determined by the law of the place where the contract was made. But if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, our rule is that the law of the place of operative effect or performance governs its validity and construction. See *Jenkins* v. *Indemnity Ins. Co.*, supra, 253, and cases cited.

In the instant case, in the declarations portion of the policy, the plaintiff stated that his residence was in Bronxville, West, New York, and that his automobile would be principally garaged there. The original automobile insurance policy issued to the plaintiff by Aetna was made up, prepared and written at one of Aetna's New York offices in 1953. All renewal policies of the original policy were made up, prepared and written by Aetna in New York. The present renewal of the policy was prepared by Aetna at its branch office on Forty-Second Street, in New York City, prior to August 14, 1958, was signed by the printed facsimile signature of Henry Beers, president and secretary of Aetna at Hartford, Connecticut, and was countersigned by one of Aetna's assistant vice presidents in the state of New York. The policy number and letters indicated that it was a New York policy. The policy was sent by mail from the Forty-Second Street branch office on or about August 14, 1958, to Ledbetter. He, as a broker, represented the plaintiff, who is his brother-in-law. Ledbetter received the policy and mailed it to the plaintiff. The policy was considered "issued" upon its deposit in the mail addressed to Ledbetter. There was no provision in the policy which gave Aetna the power to recall it from the insured or his agent once it had been issued. Aetna never requested either the plaintiff or Ledbetter to return the policy.

In the instant case therefore, the law of New York will apply unless the contract was to have its operative effect elsewhere. The court concluded that the contract (policy) issued to the plaintiff was governed by the law of Connecticut because the parties intended that it was to have its beneficial operative effect and performance here. This claim

hardly seems consistent with the purpose of the parties in entering into the contract. Presumably, that purpose was to fix in advance their rights and liabilities in the event of an accident, at least so far as the construction and the interpretation of the contract were concerned, rather than to leave them dependent on the fortuitous circumstances of the place of the accident. Indeed, the assumption underlying our applicable conflicts rule is that, when parties enter into a contract, they do so with the law of a specific jurisdiction in mind. *Jenkins* v. *Indemnity Ins. Co.*, 152 Conn. 249, 254, 205 A.2d 780. There is nothing in the instant case to suggest that this assumption is unfounded with respect to this insurance contract. The policy gives no hint that the parties thought of this contract as other than a New York transaction. In the absence of a showing that the place of operative effect of this contract was not New York, the validity and the construction of the contract are governed, under our rule, by the law of New York, where the contract was made.

The New York Court of Appeals has held that (1) § 167 (3) of the New York Insurance Law "is mandated into and made a part of every policy of automobile liability insurance issued in . . . [New York]" and (2) the legislature intended that the statute apply "no matter where the accident occurs." *New Amsterdam Casualty Co.* v. *Stecker,* 3 N.Y.2d 1, 5, 8, 143 N.E.2d 357. As New York law is to govern, the decision of New York's highest court authoritatively determines the construction of the insurance policy in the light of the statute. *Jenkins* v. *Indemnity Ins. Co.,* supra, 255; *Roomy* v. *Allstate Ins. Co.,* 256 N.C. 318, 322, 123 S.E.2d 817.

The claim that the words "any person" in the

policy satisfies the statute's requirement of specificity in including coverage in interspousal actions is without merit. Coverage for Mrs. Breen's injuries and death is excluded by virtue of § 167 (3). Nor has the plaintiff shown that it would be contrary to the public policy of Connecticut to apply the law of New York to this particular action, in which a New York resident is the injured party and a Connecticut insurance company, doing business in New York, is the insurer. *Jenkins* v. *Indemnity Ins. Co.,* supra. Indeed, the law of New York is the same as the law of Connecticut so far as the existence of negligence liability between the spouses, as distinguished from an insurance carrier, is concerned. Suffice it to say that whether the carrier is liable for indemnity has no bearing on the liability of one spouse to the other in tort. *New Amsterdam Casualty Co.* v. *Stecker,* supra, 8. As a matter of fact, the premium charged for the policy did not contemplate coverage for suits between spouses. Consequently, the plaintiff is not being deprived of anything for which he contracted or paid.

This determination would be dispositive of the appeal, adversely to the plaintiff's contentions, but for the plaintiff's claims that Aetna has waived or is estopped to avail itself of any rights which it might have under § 167 (3). The plaintiff has alleged these claims and consequently has the burden of proving them. The court concluded that (1) even if New York law was applicable, Aetna waived the benefit of § 167 (3) of the New York Insurance Law by failing to inform the Connecticut commissioner of motor vehicles that it claimed lack of coverage and (2) Aetna, on the facts of this case, is estopped from relying on § 167 (3) of the New York Insur-

ance Law because it failed to inform that commissioner that it claimed a lack of coverage. For a review of the court's conclusions of estoppel and waiver, further facts are required.

The very day of the accident, Ledbetter wrote Aetna of its occurrence; that it took place on the Merritt Parkway, in Greenwich, Connecticut, at about 5 o'clock in the morning of January 25, 1959; that the plaintiff was operating the car with his wife as a passenger in the front seat; that the plaintiff reached down to pick up his gloves, and his car swerved off the road and turned over; that, although the plaintiff was unhurt, his wife was reported dead on arrival at the Greenwich hospital; that no other car was involved; and that there was no property damage except to the car itself. This letter was received in due course by Aetna.

On January 31, 1959, the plaintiff completed and executed the required Connecticut motor vehicle accident report, stating, inter alia, that the accident occurred in Connecticut, that the plaintiff's wife was killed, and that the insurance policy, the number of which was given with the name of the insurer, provided "at least $20,000/20,000 bodily injury and $1,000 property damage liability insurance." As part of the accident report, the so-called SR-21 form was executed, giving the foregoing information as to insurance coverage. The plaintiff executed the accident report in duplicate and sent both to Ledbetter, who filed the original with the Connecticut motor vehicle commissioner, hereinafter referred to as the commissioner, in Hartford on February 3, 1959, and mailed the duplicate to Aetna at its New York City office, where it was received.

On February 13, 1959, the commissioner, to effectuate the purposes of our financial responsibility

law and especially §§ 14-116 and 14-117 of the General Statutes, sent a letter of transmittal in duplicate to Aetna, which it received at its main office in Hartford. Enclosed was the bottom portion of the SR-21 form, which stated: "Return this form within 15 days if no policy was in effect as alleged by motorist." The form also contained six questions with boxes for checking.[1]

The letter of transmittal contained the following: "You are to retain one copy of this SR 21 transmittal sheet for your records. Please return duplicate copy of transmittal sheet to this office immediately. If your records indicate no coverage or coverage less than 20,000/20,000 and 1,000 dollars at the time of the accident please note on the back of SR 21 insurance form and return to this office within fifteen days."

Aetna promptly returned the duplicate copy of the SR-21 transmittal sheet to the commissioner but did not return the bottom portion of the SR-21 form or otherwise indicate that its records showed any lack, or limitation, of coverage of this interspousal accident. On this failure to return the

---

[1] "With regard to an automobile liability insurance policy for the policyholder named on the reverse side hereof, the undersigned insurance company advises you in accordance with the items checked below.

"☐ 1. No policy was in effect on the date of accident.

"☐ 2. Our policy for the named policyholder applies to him as the operator but it does not apply to the owner of the vehicle involved in the accident.

"☐ 3. Our policy applies to the owner of the vehicle, but does not apply to the operator of the vehicle involved in the accident.

"☐ 4. *Our policy affords bodily injury coverage only.*

"☐ 5. Our policy affords property damage coverage only.

"☐ 6. Our policy affords limits of liability less than $20,000/20,000 bodily injury and $1,000 property damage. (Indicate actual limits under remarks).

"Remarks:"

bottom portion of the SR-21 form, or otherwise to indicate that there was not at least $20,000 coverage of this particular accident, the plaintiff and the defendant administrator base their claim of waiver, and the court based its conclusions of estoppel and waiver.

There are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist. *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91, 175 A.2d 565, and cases cited. In the instant case, the court found that there was no evidence produced by the plaintiff to show that he, in reliance upon Aetna's failure to return the bottom portion of the SR-21 form to the commissioner, changed his position to his detriment as a consequence thereof or that he was misled to his prejudice. Consequently, the court erred in concluding that Aetna was estopped from relying on § 167 (3) of the New York Insurance Law.

The court also concluded that the plaintiff had sustained the burden of proving waiver because Aetna did not indicate to the commissioner that there was no coverage for this accident when it returned the duplicate SR-21 transmittal sheet. Waiver, as distinguished from estoppel, is the intentional relinquishment of a known right. *Andover* v. *Hartford Accident & Indemnity Co.,* 153 Conn. 439, 444, 217 A.2d 60; *Jenkins* v. *Indemnity Ins.*

*Co.,* 152 Conn. 249, 257, 205 A.2d 780. It is not necessary that it be in express terms. It may be inferred from the circumstances if it is reasonable to do so. *DiFrancesco* v. *Zurich General Accident & Liability Ins. Co.,* 105 Conn. 162, 168, 134 A. 789.

In the instant case, Aetna was instructed to "Return this form within 15 days if no policy was in effect as alleged by motorist." There was, in fact, in effect a policy of insurance issued by Aetna with limits of liability in excess of $20,000/$20,000 bodily injury and $1000 property damage and dated with the same date as reported to the commissioner covering the automobile of the plaintiff which was involved in this accident and which had the same engine number as furnished by the plaintiff in his accident report to the commissioner. Thus, there was no occasion for Aetna to return the bottom portion of the SR-21 form. General Statutes § 14-117 (c), which concerns financial responsibility, provides: "This section [14-117] shall not apply . . . (1) to . . . [an] operator or owner [of a motor vehicle in any manner involved in an accident] if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident." Had there been another car involved in this accident or if there had been passengers other than Mrs. Breen in the plaintiff's car, the policy would have covered them. There was a policy in effect at the time of the accident, but, under New York law, it afforded no protection to the spouse. The purpose of the question asked by the commissioner in form SR-21 under the provisions of General Statutes § 14-117 (c) was not to ascertain whether the policy covered Mrs. Breen but whether there was liability insurance covering the plaintiff's car.

The court also expressly found that there was no evidence that Aetna knowingly or intentionally relinquished a known right to rely on § 167 (3) of the New York Insurance Law. To constitute waiver "there must be both *knowledge* of the existence of the right and *intention* to relinquish it." *Hoxie* v. *Home Ins. Co.*, 32 Conn. 21, 40. Since Aetna had no occasion to return to the motor vehicle commissioner the bottom portion of the SR-21 form, there is nothing in the record to justify reasonably the court's conclusion that Aetna's failure to return it was an intentional relinquishment of the rights asserted in Aetna's special defense based on § 167 (3) of the New York Insurance Law. Consequently, there was no waiver of these rights.

It is unnecessary to discuss any of the other assignments of error.

There is error, the judgment is set aside and the case is remanded with direction to render judgment declaring that the policy in question imposes no coverage for an interspousal suit arising in Connecticut and that the Aetna Casualty and Surety Company is neither obliged to defend the civil action brought by the defendant Lloyd W. Anthony, administrator, against the plaintiff nor to pay any judgment which may be rendered therein against the plaintiff.

In this opinion MURPHY and HOUSE, Js., concurred.

KING, C. J. (dissenting). The majority opinion holds that the questionnaire of the motor vehicle commissioner was so worded that if the plaintiff had a $20,000/$20,000 bodily injury policy in effect, even though that policy provided no coverage at all for the accident prompting the questionnaire, it

was proper for Aetna not to return the bottom portion of the SR-21 form. From this, the majority holds that there was no inconsistency in Aetna's failing to return the SR-21 form and thereafter claiming, under the New York statute, that there was no coverage of this accident. I am unable to accept this reasoning. It seems to me that where, as here, the facts were simple, undisputed and known to Aetna, its failure to return the form was properly found by the trial court to amount to a waiver of Aetna's right to disclaim liability by reason of the New York statute.

Waiver is the intentional relinquishment of a known right. In order to waive a claim of law, however, it is not necessary that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy. *Jenkins* v. *Indemnity Ins. Co.*, 152 Conn. 249, 257, 205 A.2d 780. Nor is it necessary that the waiver be in express terms. It may consist of acts or conduct from which waiver may be implied. *Andover* v. *Hartford Accident & Indemnity Co.*, 153 Conn. 439, 445, 217 A.2d 60. In other words, waiver may be inferred from the circumstances if it is reasonable so to do. *DiFrancesco* v. *Zurich General Accident & Liability Ins. Co.*, 105 Conn. 162, 168, 134 A. 789.

Form SR-21, and the procedure thereunder, was devised in order to carry out General Statutes §§ 14-116 and 14-117, which require the commissioner to determine, after a particular accident, whether adequate minimum insurance coverage of that accident exists or whether security should be required sufficient to satisfy any judgment which may thereafter be rendered as a result of personal injuries or property damage sustained in that acci-

dent.[2] This is especially clear from the provision of §14-117 that the commissioner require the owner or operator of the vehicle to furnish security to the extent that limits of insurance coverage, if under $20,000 for personal injuries, are below the amount determined by the commissioner to be necessary to satisfy any judgment for damages resulting from that accident. In effect, this was held in *Dempsey* v. *Tynan*, 143 Conn. 202, 210, 120 A.2d 700, in which it was decided that the commissioner should require security only to the extent that a real estate attachment was inadequate. That this was the legislative intent is further emphasized by subdivision (6) of §14-119 and by §14-122. It is obvious that the existence of a policy of insurance generally covering the operation of a motor vehicle but only under circumstances not involved in a particular accident is not a compliance with the security requirements of the financial responsibility law as to that accident and should not be treated by the insurer, under the form SR-21 procedure, as such a compliance. *Hartford Accident & Indemnity Co.* v. *Come*, 100 N.H. 177, 185, 123 A.2d 267.

We now turn to the question whether Aetna's action in failing correctly to point out the lack of any coverage of this particular accident could prop-

---

[2] It should be noted that our financial responsibility law has two aspects. One aspect, with which we are concerned here, is the requirement that the owner and operator of a car involved in an accident, if not effectively insured, must give security for the satisfaction of any claims for damages arising from that accident or suffer, inter alia, the loss of his privilege to operate a motor vehicle in this state. General Statutes §14-117. The other aspect, with which we are not here concerned, is the requirement that one found to have violated certain enumerated provisions of the motor vehicle law must provide, by insurance or otherwise, financial responsibility for future accidents. General Statutes §14-112; see *Hein* v. *Nationwide Mutual Ins. Co.*, 106 N.H. 378, 382, 213 A.2d 197.

erly be found by the court to operate as a waiver of any rights Aetna might otherwise have under § 167 (3) of the New York Insurance Law. Waiver must be based on facts known, actually or constructively, at the time of the waiver. Here there was no factual problem or dispute whatsoever. That the accident occurred in Connecticut and involved interspousal coverage, and that alone, was known to Aetna from the outset. The wording of the policy, as in the *Jenkins* case, clearly in terms covered the accident. The only question was the legal effect of the New York statute. Aetna at all times had full knowledge of the simple operative facts.

In *Williamson* v. *Massachusetts Bonding & Ins. Co.,* 142 Conn. 573, 579, 116 A.2d 169 (decided in 1955), we held, in the absence of any relevant New York authority, that § 167 (3) was not intended to, and did not, apply to an accident occurring outside the state of New York. Later, in 1957, the New York Court of Appeals held, in *New Amsterdam Casualty Co.* v. *Stecker,* 3 N.Y.2d 1, 5, 8, 143 N.E.2d 357, that the New York statute applied to interspousal actions "no matter where the accident occurs."

That was the state of the law when Aetna was called upon to act on form SR-21, and that remained the state of the law until long after Aetna made its disclaimer of coverage on January 27, 1960, following the institution of the wrongful death action. This disclaimer was made over two years before the Superior Court decision in the *Jenkins* case on August 17, 1962, and almost five years prior to our decision of the appeal in the *Jenkins* case on December 15, 1964. *Jenkins* v. *Indemnity Ins. Co.,* 152 Conn. 249, 205 A.2d 780. Aetna pointed to

nothing, which could have affected its conduct, occurring between the date of its failure to indicate lack of coverage to the commissioner on the SR-21 form and its disclaimer of coverage on January 27, 1960. As far as appears, Aetna knew at all times that it intended to deny interspousal coverage on the basis of the *Stecker* case and to litigate that issue. It chose not to offer any explanation of its completely inconsistent action in failing to indicate its claimed lack of coverage to the motor vehicle commissioner. Presumably this was because there was no rational explanation. It made no claim of lack of understanding of the SR-21 questionnaire or of ignorance of the *Williamson* and *Stecker* cases. Indeed the latter claim could hardly have been made since Connecticut is the state in which Aetna has its home office, while New York is the state in which Aetna claims the policy was issued. The trial court had ample basis for concluding that Aetna had full knowledge of its right to claim that the New York statute relieved it of liability and of the possible, if not probable, efficacy of such a claim. *Jenkins* v. *Indemnity Ins. Co.*, supra, 257. Aetna voluntarily chose to act in a way which gave the commissioner unequivocal assurance of interspousal coverage. At the trial of this action, it chose not to explain its conduct in failing to alert the commissioner to any doubt as to interspousal coverage.

On the one hand, public policy demands that the motor vehicle commissioner be given accurate information by an insurance carrier as to the coverage available for the satisfaction of a judgment growing out of a motor vehicle accident occurring in Connecticut. This is the primary purpose of the form SR-21 procedure and of the statutes in furtherance of which the form is utilized. On the other

hand, insurance carriers cannot fairly be required at their peril to resolve uncertain or disputed questions of fact which are essential to a determination of coverage under their policies. Consequently, they cannot be charged with waiver on facts not known by them, actually or constructively, when they return the SR-21 form to the motor vehicle commissioner.

Here there were no factual questions to be determined. The salient facts were simple, known and undisputed. The only question was, in the event suit was instituted in Connecticut, where it obviously would have to be instituted if the *Stecker* rule could possibly be avoided, whether our court would adhere to its decision in the *Williamson* case in the face of the *Stecker* decision. Aetna had full opportunity to explain, under "Remarks" on the SR-21 form, any uncertainty it might have had on the state of the law as to coverage of this particular accident. It made no explanation. Instead it adopted a course of action which caused the commissioner to understand that interspousal coverage existed. The obvious result would be to cause the commissioner to absolve Donald Breen from the necessity of posting security and to leave the plaintiff in the wrongful death action without the protection which the statute was intended to afford. This was not, without explanation, a proper course for Aetna to pursue, especially since on its face the wording of the policy, like that of the policy in the *Jenkins* case, covered Breen's liability for the interspousal accident. See *LaPoint* v. *Richards,* 66 Wash. 2d 585, 594, 403 P.2d 889.

Waiver is a question of fact, and, under the particular facts of this case, I do not think that the court erred in concluding that Aetna's action in

failing to return the SR-21 form was conduct inconsistent with its reliance on the New York statute as a defense. Such conduct, unexplained, could be found to be a waiver. The finding that there was no evidence that Aetna knowingly or intentionally relinquished a known right to rely on § 167 (3) of the New York Insurance Law was technically correct. Such evidence involved Aetna's state of mind and lay solely in Aetna's power to produce. As previously noted, Aetna made no attempt to offer any evidence in explanation of its conduct. But the memorandum of decision makes it clear that the court found that Aetna, by its unequivocal and unexplained conduct, which was wholly inconsistent with any reliance on the New York statute, waived the benefit of that statute. This conclusion was warranted on the subordinate facts of this case.

On the one hand, I do not think it should be held that an insurance company, by failing correctly to point out any limitations on, or lack of, coverage in returning form SR-21, under any and all circumstances ipso facto has waived, or is estopped to claim, any limitation or lack of that coverage. See cases such as *Behringer* v. *State Farm Mutual Automobile Ins. Co.*, 275 Wis. 586, 593, 82 N.W.2d 915. Nor, on the other hand, do I think it should be held that an insurance company can give any information, regardless of how erroneous, in its response to the motor vehicle commissioner under the SR-21 form without risk, under any circumstances, of having such action result in a waiver or estoppel of any limitation or lack of coverage, as seems to have been held in *Seaford* v. *Nationwide Mutual Ins. Co.*, 253 N.C. 719, 724, 117 S.E.2d 733. But see the later North Carolina case of *Harris* v. *Nationwide Mutual Ins. Co.*, 261 N.C. 499, 503,

135 S.E.2d 209; see also 7 Am. Jur. 2d 301, Automobile Insurance, § 7.

Aetna's conduct was wholly inconsistent with any claim of lack of coverage by reason of § 167 (3) of the New York Insurance Law. It made no attempt to explain that inconsistency. On the particular facts of this case, the court's conclusion of waiver should not be disturbed.

I cannot accept, at least as applied to the facts of this case, Aetna's claim that as a matter of law it could not waive the provisions of § 167 (3) because waiver can never result in the expansion of the coverage of any insurance policy. See note, 1 A.L.R.3d 1139; *Jenkins* v. *Indemnity Ins. Co.,* 152 Conn. 249, 259, 205 A.2d 780. Such a holding here would emasculate, if not destroy, the efficacy of our form SR-21 procedure. See cases such as *LaPoint* v. *Richards,* supra.

I think the judgment should be affirmed on the ground of waiver.

ALCORN, J. I concur in the dissenting opinion of the Chief Justice.