[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter came to the court by writ, summons and complaint dated January 10, 1991 and filed February 25, 1991 in the office of the clerk and thence to April 19, 1991 when the Defendant appeared and thence to October 3, 1991 when the Defendant filed an Answer and Special Defense and thence to October 28, 1991 when the Plaintiff filed an Answer to the Special Defense and thence to April 9, 1992 when the parties appeared for trial.
FACTS
Philip C. Armetta is the president and owner of the Plaintiff Corporation known as Dainty Rubish Service, Inc. and has engaged in the collection and disposal of waste material and garbage over the last 25 years. CT Page 4882
The Plaintiff and the Defendant entered into an agreement incident to which the Plaintiff provided waste containers to the Defendant Association. See Plaintiff's exhibit A.
The witness Armetta testified that he had personally written and prepared and/or typed the Service Agreement. Plaintiff's exhibit A.
The agreement by its terms refers to a date of October 1, 1989 as its commencement date but credible testimony by the witness Marcia L. Baker, president and a member of the Board of Governors of the Defendant indicates it was not executed on that date and could not have been executed until after the Board's October 1989 meeting which was the 3rd Tuesday of that month.
The pertinent provisions of Plaintiff's exhibit A are set forth herein.
SERVICE AGREEMENT
THIS AGREEMENT, for waste collect on and removal is made and entered into this first day of October, 1989 by and between BEACON HILLS CONDO ASSOCIATION (hereinafter referred to as "Account") and DAINTY RUBBISH SERVICE INC., (hereinafter referred to as "Dainty"). Dainty hereby agrees to perform the services set forth on the attached Schedule A, attached thereto and incorporated herein by reference, commencing the first day of October 1989 for a period of five (5) years, payable according to the following schedule: The rate for the period commencing October 1, 1989 will be THREE THOUSAND ONE HUNDRED ELEVEN AND 50/100 DOLLARS ($3,111.50) a month plus tax. There will be a % increase on the service charge commencing at each anniversary date.
In the event the town institutes or increases dumping fees the account will assume payment.
Dainty hereby agrees to provide all labor and agrees to carry liability insurance and Workman's Compensation Insurance as by applicable state law required.
BILLING:
Dainty shall provide Account with a monthly invoice which invoice shall be paid by Account on or before the tenth day following receipt thereof. In the event of non-payment of charges or any amounts due Dainty pursuant of CT Page 4883 this Agreement the Account shall bear all costs of collection including, without limitation, reasonable attorney's fees.
RENEWAL:
This Agreement shall be automatically renewed for a period of (1) year as of its anniversary date, unless Account shall have notified Dainty in writing, of its desire to terminate the service provided hereunder on not less than sixty (60) days prior written notice.
EXCUSE OF PERFORMANCE:
Dainty shall not be responsible for its performance if the Agreement is interrupted or delayed by reason of Acts of God, strikes, lockouts or other industrial disturbances, wars, blockades, riots, explosions, fires, accidents to equipment or any other causes not within its control.
MISCELLANEOUS:
All containers or equipment of Dainty shall remain the property and equipment of Dainty, and will be returned by Account upon termination of service. Any damage to such property and equipment, other than normal wear and tear, will be charged to Account, and payable to Dainty as additional service cost.
THIS AGREEMENT shall be binding upon and shall insure to the benefit of the successors, assigns, legal representatives and heirs of the parties hereto.
IN WITNESS WHEREOF, the parties hereto have hereunto set their hands on the day and year first above written.
BEACON HILLS CONDO ASSOCIATION
By Marcia L. Baker It's President
DAINTY RUBISH SERVICE, INC.
By Philip Armetta It's President
With the previso that if we can secure Middletown Services we can terminate this contract. CT Page 4884
We will also be presented with an acceptable way to handle recycling mandated in Jan. 1991 by the State of Conn."
The Defendant Association by letter dated October 31, 1990 addressed to the Plaintiff gave notice of termination of the service agreement, see Plaintiff's exhibit B.
The date of termination as set forth in Plaintiff's exhibit B was December 31, 1990.
The Plaintiff endeavoured to show that the notice contained in exhibit B was not received on that date but some time after November 16, 1990, see Plaintiff's exhibit C. The court is not persuaded that the Plaintiff has proved by a preponderance of the evidence the requisite causal link up between the two exhibits B and C.
Some time after the October 31, 1990 letter of termination the Plaintiff sent an open letter to all members of the Defendant Association acknowledging the letter of termination. See Defendant's exhibit 1. After December 31, 1990 the Defendants contracted with a different provider of waste removal services.
After receipt of the letter of termination the Plaintiff endeavoured to negotiate with representatives of the Defendant to effect a revised contract, see Defendant's exhibit 1, expressed a willingness to change terms and conditions, attended 2 meetings of the Defendant Board although uninvited at the second meeting and engaged in considerable discourse with the Defendant Association. The Defendants representatives were lay persons.
At the second meeting which the Plaintiff attended, in response to the Board's comment that the prior agreement or proposed renegotiation terms were unfair and not equitable, the Plaintiff's reply was "Tough".
The Plaintiff, through its president Mr. Armetta, and the Board's group manager, the witness Peter Roberts, engaged in a heated discussion at the above noted second meeting as to rates, schedules and fees. The Plaintiff on several occasions vigorously pressed representatives of the Defendant Board by telephone and personal appearance at their residences to try and come to new terms and agreement to no avail. Testimony of Board member Susan Mohr. CT Page 4885
DISCUSSION AMBIGUITY CONSTRUED AGAINST THE MAKER
The contract is ambiguous in that it contains terms which are inconsistent in their meaning. "It is fundamental that doubtful language should be interpreted most strongly against the party who has selected that language." 17 Am.Jur.2d Section 348. "When two or more meanings may fairly be given to language in a contract, the language is to be construed against the one who drew it" . . . "and likewise, the language of a contract is typically construed most strongly against the party whose language it is and for whose benefit it was inserted." Sturman v. Socha, 191 Conn. 1,9 (1983).
POWER TO TERMINATE
The contract gave the Defendant the power to terminate. The contract contained two termination clauses. The termination clause is found in the renewal paragraph and the power to terminate at the bottom of page two of Exhibit A handwritten by the Defendant. Contained in the first printed paragraph of the second page is a clause which states: "unless Account shall have notified Dainty in writing, of its desire to terminate the service provided hereunder on not less than sixty (60) days written notice." (emphasis added) The word unless means "except on the condition that" American Heritage Dictionary, Houghton Mifflin Company, Boston (1976). There are no other conditions stated therein. The agreement does not state that the sixty (60) day notice must be within sixty (60) days of the anniversary date. The agreement does not state that the Plaintiff had to receive the notice on or before sixty days of the requested termination, or of the manner of delivery of such notice. The witness Mohr testified that she gave the notice to her agent on October 31, 1990, the day she signed it. She did what the document called for. The defendant executed a written termination notice on a date not less than sixty days from the requested termination of service.
The plaintiff testified that there were negotiations prior to the receipt of the notice and after the receipt of the notice. Plaintiff was aware of the Defendant's intention to terminate prior to his receipt of the written notice, therefore, he had more notice than the formal execution of the written sixty (60) days notice to satisfy the purposes of the notice requirement.
The plaintiff testified that the purpose of the CT Page 4886 sixty day notice was to give time to remove dumpsters and to renegotiate with the account if possible. Defendant's Exhibit One shows that Mr. Armetta did indicate a willingness to renegotiate this contract after the first year and prior to the expiration of the five year term.
CONTRACT OF ADHESION
The subject contract in dispute is a "contract of adhesion" because the Plaintiff offered the Defendant his own document, drafted by him, the terms of which were not subject to bargaining. The relative bargaining position of the parties was greatly disparate. The Plaintiff has several waste disposal businesses and has been in business for many years. The Defendant is an association of consumer homeowners. The President of the Defendant, who signed the document, testified that this was the first contract she ever signed. The Plaintiff has negotiated many contracts over 25 years.
The Plaintiff was fully aware of the dissatisfaction with his prices and charges for tipping fees. The Plaintiff knew that the Defendant would continue to look for more economical services. Plaintiff was fully aware of the impending termination, had a handwritten notice on the contract to that effect, has demonstrated no harm due to the timeliness of the notice and was paid for all services rendered.
The reasonable purposes of the notice provision were met when the Plaintiff was given sufficient time to remove his property when and if renegotiation failed.
The Plaintiff offered no documentary evidence as to any of his monetary assertions. Under Connecticut law, the Plaintiff is obligated to show that he took reasonable steps to minimize his damages. Danpar Associates v. Somersville Mills Sales Room, Inc., 182 Conn. 444, 446
(1980). Plaintiff did not show that his dumpsters were not in use at some other site or that his total business was reduced.
UNENFORCEABILITY
The evidence supports the conclusion that the contract is not enforceable because the parties were mutually mistaken as to the meaning of its terms. "To constitute offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on identical understanding of the parties." Bridgeport Pipe CT Page 4887 Engineering Co. v. DeMatteo Construction Co., 159 Conn. 242,249 (1970).
ESTOPPEL
The Plaintiff is precluded from now asserting that the service agreement was not terminable and subject to renegotiation after one year. Mr. Armetta, by his own words admitted to every resident of the Defendant that he was willing to renegotiate this agreement when he had hand-delivered to 176 doors Defendant's Exhibit One. He is now estopped from denying that it was not subject to renegotiation. "Estoppel rests on the misleading conduct of one party to the prejudice of the other." Bouchard v. Travelers Indemnity Co., 28 Conn. Sup. 122, 125 (1969); Breen v. Aetna Casualty Surety Co., 153 Conn. 633, 643 (1966).
There was no mutual assent or meaningful business discussion as to the meaning of the various terms.
Plaintiff in its brief notes the following:
"The ambiguity of the contract centers around the meaning of the term anniversary date which appears in the first paragraph and in the renewal paragraph. Plaintiff acknowledges that ambiguities contained in a contract are generally construed against the party who drew the contract". Sturman v. Socha, 191 Conn. 1 (1983).
The plaintiff through its president Philip Armetta drew the contract. The contract is ambiguous, it lacks clarity and precision. The Plaintiff assumes any risks attendant to his personal preparation of a contract inartfully drawn.
The Defendant after the first year gave notice of termination. Under the ambiguous provisions of the agreement the notice given by the Defendant was sufficient and adequate.
The Defendant Association paid all invoices and charges through December 31, 1990.
The agreement in fact was an agreement for one year based on a reasonable reading and the testimony adduced. Notice of termination was given and the agreement was not renewed.
The Defendant complied with requirements as to notice. CT Page 4888
The actual date of execution could not be the anniversary date due to the manner in which the agreement was drafted and the uncertainty as to actual execution.
Judgment may enter in favor of the Defendant.
AUSTIN, J.