## CARRIER CORPORATION *v.* HOME INSURANCE COMPANY ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 352383S
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed July 15, 1994

*Cohen & Wolf,* for the plaintiff.

*Halloran & Sage,* for the named defendant.

*Gordon, Muir & Foley,* for the defendant Liberty Mutual Insurance Company.

O'NEILL, J. The plaintiff seeks to recover from nineteen remaining defendant insurance companies for insurance coverage relating to environmental damage claims. There are forty-four environmental sites in various states across the country that are involved. Twenty of those sites are in the state of New York; none is in Connecticut. The balance is in nine other states. The action involves almost 400 insurance policies issued over a period of more than thirty years by many insurance companies.

The question now before the court is the choice of substantive law to be applied to this action at trial. The plaintiff proposes that Connecticut law be applied; Liberty Mutual, for part of its coverage period, proposes Massachusetts law and, for the balance, New York law; and all other proposing parties propose the law of New York.[1]

---

[1] A few parties have made either no proposal or a late proposal.

In Connecticut in contract cases courts have chosen the state where the contract was made as the state whose law will be applied.[2]

# I

## LIBERTY MUTUAL 1980–1985 PRIMARY POLICIES

In years 1980 through 1985 all of the contracts between the plaintiff's parent company, United Technologies Corporation (UTC), and Liberty Mutual were entered in Massachusetts and Connecticut, with a greater proportion in Massachusetts. The contracts at issue were negotiated mainly in Boston. The annual renegotiations of those contracts were held in Boston. UTC sent premium payments to Boston and the claims were paid by the special claims department in Boston.

There were some telephone conversations and meetings in Connecticut between representatives of UTC and Liberty Mutual. Coverage position letters for the plaintiff's environmental claims were sent to Connecticut. UTC's sales offices listed on the Liberty Mutual policies for 1980–85 were East Hartford and Glastonbury. UTC received, at its Hartford office, endorsements to Liberty Mutual policies and copies of policies from Liberty Mutual's sales offices in East Hartford and Glastonbury.

On balance it is clear that these policies are controlled by the law of Massachusetts.

# II

## EXCESS POLICIES AND LIBERTY MUTUAL 1950–1983 POLICIES

The plaintiff's principal place of business during all the relevant period until 1990 was in Syracuse, New

---

[2] There is a major exception to that general rule, which is, "if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, our rule is that the

York. In 1990 it moved its principal place of business to Connecticut. Most of the excess policies were negotiated in New York or obtained by the plaintiff through New York brokers; many of the excess insurers issued the policies from their New York offices; and any claims paid to the plaintiff would have been paid to its Syracuse, New York office, the location of its risk management office.

The plaintiff argues that Connecticut law should apply because the plaintiff moved its principal place of business from Syracuse to Farmington, Connecticut, in 1990. It asserts that the operative effect of these policies would be felt in Connecticut because Connecticut will be the state to which the excess insurers would send any payment of the plaintiff's claims. The plaintiff has been a wholly owned subsidiary of UTC since 1979. UTC is headquartered in Hartford. The plaintiff suggests that Travelers Insurance Corporation (Travelers), a former defendant in this action that has since settled with the plaintiff, has its principal place of business in Connecticut and that Travelers policies may have to be interpreted as a part of this litigation.

In Connecticut a "liability arising out of contract depends upon the law of the place of contract 'unless the contract is to be performed or to have its beneficial operation and effect elsewhere . . . .' " *Levy* v. *Daniels' U-Drive Auto Renting, Inc.,* 108 Conn. 333, 338, 143 A. 163 (1928).[3] *Levy* has been followed consistently in Connecticut. See, e.g., *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499, 356 A.2d 139 (1975); *Breen* v. *Aetna Casualty & Surety Co.,* 153 Conn. 633,

---

place of operative effect or performance governs its validity and construction." *Breen* v. *Aetna Casualty & Surety Co.,* 153 Conn. 633, 637, 220 A.2d 254 (1966).

[3] The fact that the court's decision was based on contract rather than tort has been criticized as an "escape device." *O'Connor* v. *O'Connor,* 201 Conn. 632, 646–47, 519 A.2d 13 (1986).

637, 220 A.2d 254 (1966); *Jenkins* v. *Indemnity Ins. Co.*, 152 Conn. 249, 253–54, 205 A.2d 780 (1964).

In *Simaitis* v. *Flood,* 182 Conn. 24, 33–34, 437 A.2d 828 (1980), the Supreme Court chose to follow the Restatement (Second), Conflict of Laws § 181 in deciding which law to apply in a worker's compensation case. It specifically rejected "the place-of-the-injury rule." Id., 31. Then in *O'Connor* v. *O'Connor,* 201 Conn. 632, 648–50, 519 A.2d 13 (1986), the court abandoned a "categorical allegiance to the doctrine of lex loci delicti in tort actions," and decided to "incorporate the guidelines of the Restatement."

Later, in *Casanova Club* v. *Bisharat,* 189 Conn. 591, 598–99, 458 A.2d 1 (1993), the court acknowledged that § 188 of the Restatement (Second), supra, provides that choice of law is to be determined in contract cases on the basis of "the most significant relationship to the parties and to the transaction." The court chose not to adopt that § 188 approach for that gambling debt case.

It thus appears that the Supreme Court is giving clear recognition to the Restatement (Second) in general, but limited acknowledgement to § 188. That section provides as follows: "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of

business of the parties. These contracts are to be evaluated according to their relative importance with respect to the particular issue.

"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203."

Section 6 of the Restatement (Second) provides: "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

Recently, the Connecticut Superior Court in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.,* Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 351982 (February 24, 1993) (*Freed, J.*), applied § 188 of the Restatement to make a choice of law determination in an insurance contract coverage case. In *Reichhold,* the plaintiff argued that the law of the site of the claim should apply to a multistate risk policy. The defendants argued that § 188 of the Restatement provides the applicable test and that the substantive law should be determined by the most significant relationship test under § 188. The *Reichhold* court stated, after scholarly analysis: "This court, however, chooses to abandon § 193 in a multistate risk

policy. The reasons for this were best summed up by the court in *Boardman* v. *United Services Automobile Assn.,* 470 So. 2d 1024, 1033–34 (Miss. 1985). In *Boardman,* the court recognized that the more general provisions of the Restatement (Second) of Conflict of Laws §§ 188 and 6 apply when the issues concern coverage under an insurance policy." In *Boardman,* the court said: "The outcome-determinative question here, however, appears to be one of coverage. . . . This is a matter having little to do with the location of the risk. This coverage question invokes the exception to the general 'principal location of the insured risk' rule of Restatement § 193. In our view the coverage issue tendered here is an issue unrelated to the insured risk, as a result of which the choice of law determination must be made by reference to the more general principles of Restatement § 6 and § 188, for here we are concerned with the meaning of the insurance contract. . . ." Id., 1033–34.

The present case, as the plaintiff states in its memorandum of March 1, 1994, is a "coverage lawsuit." This court, too, chooses to be guided by §§ 6 and 188 of the Restatement.

In tracking § 6 (2) (a) through (g) the court finds: (a) the needs of the interstate and international systems are best served by predictability and confident reliance on the contracting parties' expectations; (b) there are no relevant policies of this forum that require the court in this situation to reject the place where the large majority of the contracts were entered; (c) the court cannot find that other states have relevant policies that would conflict with choosing either New York or Connecticut law; (d) as most contractual contacts were made in the state of New York the court infers that the parties would expect the law of that state to apply and would make every effort to protect those expectations; (e) the most important policy underlying the

field of insurance law is to assure the protection of the insured in accordance with the policy of insurance and the court finds no reason to believe that will not occur upon the application of the law of New York; (f) certainty, predictability and uniformity will all be greatly enhanced by the use of the law of the place of contract in this situation; and (g) the court cannot find that the application of Connecticut law would be easier but it might be easier for this court to determine what it is.

## III

### SERVICE OF SUIT CLAUSE IN THE LONDON MARKET INSURERS' POLICIES

The plaintiff argues, with respect to the London Market Insurers, that a specific clause in their policies is an effective choice of law provision that controls which substantive law governs this action. The London Market Insurers policies contain the following language: "Service of Suit. It is agreed that in the event of the failure of Underwriters herein to pay any amount claimed to be due hereunder, Underwriters here on, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court." The excess defendants argue that this clause is a forum selection clause in the sense that the clause constitutes a consent by foreign insurers who might not otherwise be amenable to personal jurisdiction to be sued in the United States. The plaintiff argues that the clause is a choice of law clause that allows it to choose the forum and the substantive law that will be applied to any suit against the insurers. Under that concept, the plaintiff asserts that it has chosen Connecticut law.

The service of suit clause allows actions by insureds to be brought before "any Court of competent jurisdiction within the United States." The critical phrase in that clause, however, is "the law and practice of such Court." The court treats the expression "such court" as meaning this court for the purposes of this analysis. This court does not have any substantive law. The state of Connecticut has substantive law. All this court may do is apply the law of this state to the choice of law question. The clause is not ambiguous and it "is not a choice of law provision." *W. R. Grace & Co.* v. *Hartford Accident & Indemnity Co.,* 407 Mass. 572, 580, 555 N.E.2d 214 (1990).

The law of the state of New York is the most appropriate law to be applied to the claims against the London Market Insurers under the Restatement (Second), supra, § 188.

## IV

### Conclusions

Because of the large number of states in which relevant sites are found, this court does not consider use of the law of those states. As the plaintiff asserts in its memorandum of March 1, 1994: "Furthermore, the law-of-the-site approach would lead to inefficiency, jury confusion and the probability of inconsistent decisions in the same court with respect to the very same policy of insurance."

In this action there are contract connections with Canada, England, Illinois, Massachusetts, New York, Connecticut, New Hampshire, Georgia and possibly other jurisdictions. As the plaintiff says in its memorandum of March 1, 1994, the plaintiff's "policies of insurance were made in various locations throughout the world, and Carrier's claims trigger policies made during a number of years." It then goes on to argue

that if this court were to apply exquisitely the place of contracting rule to each policy, "[t]his court would have to determine questions relating the same facts of a site with reference to the various laws governing each policy. There is no sound reason to choose such an approach." This court agrees.

"Piecemeal resolution of common insurance policy coverage questions or questions concerning the insured's knowledge at various times is inappropriate. Dispersed decision-making wastes the time and resources of parties and the courts and permits inconsistent results." *W. R. Grace & Co.* v. *Hartford Accident & Indemnity Co.*, supra, 407 Mass. 579 (re forum non conveniens question); see also *Westinghouse Electric Corp.* v. *Liberty Mutual Ins. Co.*, 233 N.J. Super. 463, 559 A.2d 435 (1989). The same thinking is applicable to this choice of law question.

Liberty Mutual's arguments and proof that its policies for the 1980 through 1985 period should be considered based on Massachusetts law are well founded. There is not any doubt that if the claims under those policies were presented separately to this court Massachusetts law would be applied.

Although some minimal difficulty and confusion might result for the jury in having two sets of law, neither of the parties who argued that issue suggested New York law—just the law of Connecticut and Massachusetts. As the plaintiff said, if "the law of another state governs [this litigation] this court is quite capable of applying such law." The excess carriers do not seem to object to the use of Massachusetts law for those Liberty Mutual primary policies. This court and the jury can handle the law of two states; but no more.

The law to be applied to this action shall be the applicable law of the state of New York except for the claims

under the Liberty Mutual policies of 1980 through 1985, to which shall be applied the law of the commonwealth of Massachusetts. This ruling applies to all parties regardless of whether they made proposals for choice of law.